[No. C065812. Third Dist. Sept. 27, 2011.]

PANAKOSTA PARTNERS, LP, et al., Plaintiffs and Appellants, v. HAMMER LANE MANAGEMENT, LLC, et al., Defendants and Respondents.

COUNSEL

Hansen, Kohls, Jones, Sommer & Jacob, Daniel V. Kohls, Gregory T. Fayard; CVM Law Group, Robert D. Collins and Joseph D. O'Neil for Plaintiffs and Appellants.

Freidberg & Parker, Edward Freidberg, Port J. Parker and Suzanne M. Alves for Defendants and Respondents.

OPINION

HOCH, J.—Hammer Lane R.V. and Mini-Storage is a limited partnership that owns and operates a storage facility in Stockton, California. After disagreeing about whether to sell the facility, appellants Panakosta Partners, LP, and other limited partners[1] sought to wrest control from respondents Hammer Lane Management, LLC, and other limited partners who collectively held a majority interest in the partnership.[2] Management filed an action seeking judicial dissolution of the partnership as well as declaratory and injunctive relief. Panakosta sought to avoid dissolution and petitioned to buy out Management's share of the business in a "special proceeding" pursuant to Corporations Code section 15908.02.[3] Management dismissed with prejudice

---

[1] Appellants are Panakosta Parkers, LP, Diversified Foundation, LP, Sharon Scofield, as trustee of the Scofield Family Trust, and Lance Leffler. We refer to appellants collectively as Panakosta.

[2] Respondents are Hammer Lane Management, LLC, Richard and Ravinder Samra Family Trust, and Bernard C. Kooyman and Donna K. Kooyman Revocable Living Trust. We refer to respondents collectively as Management.

[3] Undesignated statutory references are to the Corporations Code.

Section 15908.02 provides:

"(a) On application by a partner, a court of competent jurisdiction may order dissolution of a limited partnership if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement.

"(b) In any suit for judicial dissolution, the other partners may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the proceeding (the 'moving parties') at their fair market value. In fixing the value, the amount of any damages resulting if the initiation of the dissolution is a breach by any moving party or parties of an agreement with the purchasing party or parties, including, without limitation, the partnership agreement, may be deducted from the amount payable to the moving party or parties.

"(c) If the purchasing parties (1) elect to purchase the partnership interests owned by the moving parties, (2) are unable to agree with the moving parties upon the fair market value of the partnership interests, and (3) give bond with sufficient security to pay the estimated reasonable expenses, including attorneys' fees, of the moving parties if the expenses are recoverable under paragraph (3) [sic], the court, upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper

its cause of action for judicial dissolution and filed an "anti-SLAPP"[4] motion under Code of Civil Procedure section 425.16. The trial court granted the anti-SLAPP motion and denied Panakosta's petition for buyout.

On appeal, Panakosta contends the trial court erred by (1) disallowing it to buy out Management's interest under section 15908.02, and (2) granting the anti-SLAPP motion and awarding fees and costs to Management. Management counters that Panakosta cannot appeal from the order denying the petition for buyout.

We conclude that Panakosta has properly appealed from the denial of its petition for buyout under section 15908.02. We affirm the order denying the petition for buyout, but conclude that the trial court erroneously granted the anti-SLAPP motion. Accordingly, we reverse the award of attorney fees and costs to Management under Code of Civil Procedure section 425.16.

---

county by the purchasing parties, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties.

"(d) The court shall appoint three disinterested appraisers to appraise the fair market value of the partnership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited partnership unless payment is made for the partnership interests within the time specified by the decree. If the purchasing parties do not make payment for the partnership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorneys' fees, of the moving parties. Any member aggrieved by the action of the court may appeal therefrom.

"(e) If the purchasing parties desire to prevent the winding up and dissolution of the limited partnership, they shall pay to the moving parties the value of their partnership interests ascertained and decreed within the time specified pursuant to this section, or, in the case of an appeal, as fixed on appeal. On receiving that payment or the tender thereof, the moving parties shall transfer their partnership interests to the purchasing parties.

"(f) For the purposes of this section, the valuation date shall be the date upon which the action for judicial dissolution was commenced. However, the court may, upon the hearing of a motion by any party, and for good cause shown, designate some other date as the valuation date."

Section 15908.02 was enacted in 2006, but did not become effective for partnerships formed prior to 2008 until January 1, 2010. (Stats. 2006, ch. 495, § 20; see also Corp. Code, § 15912.06, subd. (a)(1).)

Consistent with section 15908.02, we refer to the parties seeking judicial dissolution as "moving parties" and parties seeking to avoid dissolution through buyout as "purchasing parties."

[4] "SLAPP is an acronym for strategic lawsuit against public participation." (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1040, fn. 1 [61 Cal.Rptr.2d 58].)

## FACTUAL AND PROCEDURAL HISTORY

### *Complaint and Cross-complaint*

In September 2008, Management filed a complaint alleging that the partnership had operated the storage facility for years with a consistently negative cashflow. Management eventually decided to sell the facility on the open market. Panakosta disagreed with the decision to sell and attempted to assume control of the partnership from Management. In an effort to remove Management as general partner, Panakosta held a meeting with other limited partners who collectively held only a minority interest in the partnership. Panakosta then filed a purported amendment to the certificate of limited partnership with California's Secretary of State. The amendment listed HLMS, LLC, as the new general partner. HLMS, LLC, began receiving funds from operations of the partnership in a new bank account.

Based on these events, Management concluded that it was "not reasonably practicable for the partnership to continue" and sought judicial dissolution under the terms of the partnership agreement and pursuant to former section 15636, subdivision (f)(1)(A).[5] Management also sought declaratory relief confirming that Panakosta had acted wrongfully in attempting to usurp control over the partnership. Additionally, Management requested that Panakosta be enjoined from exercising any further control over the partnership.

In June 2009, Panakosta filed a cross-complaint asserting that Management had breached the partnership agreement and its fiduciary duties, and engaged in conversion and fraud. The cross-complaint also stated a cause of action for "determination of partner's buyout price" under terms of the partnership agreement. In support, Panakosta alleged that "[b]y refusing to submit to the provisions of the buy-out section contained in Section 9 of the Partnership Agreement, [Management] acted in breach of the Partnership Agreement, violated [its] fiduciary duty, and duty of loyalty. [Panakosta] respectfully request[s] that this Court stay the dissolution of the Partnership and order the Cross-Defendants to participate in the buy-out provisions of Section 9 of the Partnership Agreement."

---

[5] Former section 15636 provided the rules that determined the rights and duties of the partners in relation to the limited partnership. Subdivision (f)(1)(A) of former section 15636 stated that the limited partners had the right to vote on the dissolution and winding up of the limited partnership, and such action could be taken only by the general partners and with the affirmative vote of a majority in interest of the limited partners. Section 15636 was repealed effective January 1, 2010. (Stats. 2006, ch. 495, § 18.)

*"Special Proceeding" Under Section 15908.02*

On April 14, 2010, Panakosta filed a "special proceeding to elect to purchase partnership interests" under a new case number in order to buy out Management's partnership interests under section 15908.02.[6] Concurrently with the petition, Panakosta filed a motion for appointment of appraisers to value the partnership and for a stay of the related dissolution proceeding.

On April 20, 2010, Management dismissed with prejudice its cause of action for judicial dissolution. Three days later, Panakosta dismissed its cross-complaint. On April 27, 2010, Management filed an opposition to the petition for buyout. In the opposition, Management pointed out that no cause of action for judicial dissolution remained pending.

Also on April 27, 2010, Management filed an anti-SLAPP motion directed at the petition for buyout. Panakosta opposed the motion.

In May 2010, the trial court granted Panakosta's motion for appointment of appraisers and a stay of the related case.

*Ruling on Petition for Buyout (§ 15908.02)*

In June 2010, after initially granting Panakosta's petition for buyout, the trial court sua sponte issued an order denying the petition. In pertinent part, the court explained:

"[Panakosta's] Motion for an Order Appointing Appraisers and Stay of Dissolution Proceedings is denied[.] [¶] . . . [¶]

"No Judicial Dissolution Proceeding is Pending

"The basis for this petition was the pending cause of action in the related civil action for Judicial Decree of Dissolution[.] That cause of action has been dismissed by [Management.] Therefore no request for judicial dissolution of the limited partnership remains as the condition precedent for the 'buy out.' [¶] . . . [¶]

"No voluntary dissolution is currently proceeding under the facts before the Court.

---

[6] Although the superior court clerk required that the "special proceeding" portion of the document title be erased prior to filing, the intended title is reflected at the bottom of each page of the petition.

"The related civil action is the proper forum for any request to buy-out shares. This Petition violates the one action rule or primary rights doctrine, which seeks to avoid splitting causes of action to enforce a single right. The cases have invoked the rule against splitting a cause of action in order to abate a later suit or bar it on *res judicata* grounds when that suit alleged a different theory of recovery for the same injury[.] *Grisham v. Philip Morris* (2007) 40 Cal.4th 623, 642 [54 Cal.Rptr.3d 735, 151 P.3d 1151].

"No legitimate reason exists to have filed this separate special proceeding, it should have been filed as part of the related civil action[.]

"Agreement of the Parties

"As an alternate sufficient basis for the denial of this motion, . . . sec 15901.10(a) provides '[e]xcept as otherwise provided in subdivision (b), the partnership agreement governs relations among the partners and between the partners and the partnership[.] *To the extent the partnership agreement does not otherwise provide*, this chapter governs relations among the partners and between the partners and the partnership[.]

"The Cross-complaint filed in the related civil action by [Panakosta], reflects an 8th cause of action for determination of partner's buyout price, attaching the Agreement of Limited Partnership of Hammer Lane RV & Mini Storage, LP ('Agreement')[.]

"Section 9, et seq[.] of the Agreement provides for the terms of the Buy-Out of partners by each other, including a procedure for appointment of appraisers[.]

"Thus, since the written Agreement between [Panakosta] and [Management] already sets forth provisions by its terms for the buy out of partnership shares, which procedure was initially pursued by [Panakosta], but then subsequently abandoned, the terms of the parties' written Agreement controls the manner of partnership buy-out, not the Corp[.] Code statutory scheme, except where the Agreement does not otherwise provide[.] [¶] . . . [¶]

"No showing has been made by [Panakosta] that the procedure for a buy out in the Agreement is absent or deficient, and therefore reliance on the statutory scheme in the Corp[.] [C]ode is not appropriate[.] The Court will not proceed under . . . sec 15908.02[.]"

*Ruling on the Anti-SLAPP Motion*

On June 18, 2010, the trial court granted Management's anti-SLAPP motion. The court's ruling explained in pertinent part:

"[Management] move[s] to strike the unverified Petition to Elect to Purchase Partnership Interest in this action, under . . . sec. 15908.02, which seeks to buy out [Management's] partnership interests, to avoid judicial dissolution of the partnership pled in the related civil action (case no 2008-00023098), currently scheduled for trial . . . .

"The Petition was clearly filed in response to the cause of action for dissolution of partnership contained in the related civil action, and thus necessarily 'arises from' the related civil action, within the meaning of the anti-SLAPP statute[.]

"As the related civil action is clearly an 'act in furtherance of a person's right to petition' which includes all judicial proceedings, moving parties have met their initial burden on an anti-SLAPP motion[.] [¶] . . . [¶]

"The civil action contained a cause of action for judicial dissolution of the partnership, which has since been dismissed by [Management] in the civil action[.]

"To the extent that [Panakosta] argues that [its] 'application' to buy out the partners who pled a cause of action for judicial dissolution is not covered by the anti-SLAPP statute, the motion to strike here is not directed to the 'application' but to the Petition, itself, which is expressly covered by the statutory language and by the . . . case [of *Thomas v. Quintero* (2005) 126 Cal.App.4th 635 [24 Cal.Rptr.3d 619]].

"The Court finds that the Petition is subject to a motion to strike strategic litigation against participation under C C P, sec 425.16 and that [Management has] met [its] initial burden of proof[.]

"<u>Probability of Prevailing on the Claim</u>

"Once [Management has made a] prima facie showing, the burden shifts to [Panakosta] to establish a probability that [it] will prevail on whatever claims are assert[ed] against [Management][.] C C P, sec 425.16(b)[.]

"In the second phase, [Panakosta] must show both that the claim is legally sufficient and there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment *McGarry v. University of San Diego* (2007) 154 Cal.App4th [*sic*] 97, 108 [64 Cal.Rptr.3d 467][.]

"To support the[] Petition under . . . sec. 15908.02 (c), [Panakosta has] the burden of showing 'that [it] (1) elect[s] to purchase the partnership interests owned by [Management], (2) [is] unable to agree with [Management] upon

the fair market value of the partnership interests, and (3) give bond with sufficient security to pay the estimated reasonable expenses, including attorneys' fees . . . .'

"Absent that showing, the superior court need not act to stay the winding up and dissolution proceeding or proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties. [Section] 15908.02(c)[.]

"[Panakosta] cannot rely on [its] unverified petition, nor [has it] provided any declarations or documentary evidence in opposition to this anti-SLAPP motion, other than the Court's Tentative Ruling of May 10, 2010. The evidentiary showing required must be made by competent admissible evidence within the personal knowledge of the declarant. *Schoendorf v. U.D. Registry* (2002) 97 Cal.App4th [*sic*] 227, 236[.]

"That May 10, 2010, Tentative Ruling was taken under submission pending the determination of the bond and appointment of appraisers is not final or binding on the parties, rather is [*sic*] being determined concurrently herewith[.] A tentative ruling, is just that, tentative, until the Court's order becomes final, and is thus not admissible evidence. While the Court may take judicial notice of the tentative ruling, such notice does not change the status of the ruling. . . .

"[Panakosta has] failed to submit any admissible evidence to support [its] burden of showing facts to sustain a decision on the Petition in [its] favor[.] [¶] . . . [¶]

"[T]he cross-complaint filed in the related civil action reflects that the 8th cause of action is for determination of partner's buyout price, attaching the Agreement of Limited Partnership of Hammer Lane RV & Mini Storage, LP ('Agreement'). Section 9, et seq[.] of the Agreement provides for the terms of the Buy-Out of partners by each other, including a procedure for appointment of appraisers[.]

"Thus, since the written Agreement between [Panakosta] and [Management] already made provisions by its terms for the buy out of partnership shares, which procedure was initially pursued by [Panakosta], but then subsequently abandoned, the terms of the parties' written Agreement controls the manner of partnership buy-out, not the Corp[.] Code statutory scheme, except where the Agreement does not otherwise provide[.] No showing has been made by [Panakosta] that the Agreement is lacking, and the statutory scheme in the Corporations [C]ode must be relied upon[.]

"In this motion, in the total absence of any evidentiary showing by [Panakosta] that [it is] likely to prevail on any of the three required prongs in

support of [its] petition, and with the conflict with . . . sec 15901.10(a)[,] the Court finds that [Panakosta has] failed to meet [its] burden, and the special motion to strike the Petition is granted[.]"

Panakosta timely filed a notice of appeal from the order denying its petition for buyout and from the order granting the anti-SLAPP motion and awarding fees and costs to Management as the prevailing party.

DISCUSSION

I

*Whether a Denial of Buyout Under Section 15908.02 Is Appealable*

Management contends the trial court's denial of Panakosta's petition for buyout under section 15908.02 is nonappealable. We disagree.

■ Subdivision (d) of section 15908.02 provides that "[a]ny member aggrieved by the action of the court may appeal therefrom." Even though it appears this language contains a drafting error in referring to "member" when limited partnerships only have "partners,"[7] subdivision (d) nonetheless expressly confers a statutory right to appeal from an action of the court on a request for buyout of interests by partners who seek judicial dissolution of a partnership.

■ Panakosta was aggrieved by the trial court's denial of the motion to buy out the majority partners' interests under section 15908.02. A party who has an interest recognized by law and who is adversely affected by the judgment or order is an aggrieved party. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1035 [111 Cal.Rptr.2d 243].) Panakosta's interest in vindicating its statutory right to buy out Management was "immediate, pecuniary and substantial, and not merely a nominal or remote consequence" of the trial court's ruling. (*Howard Contracting, Inc. v. G. A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 58 [83 Cal.Rptr.2d 590].) Thus, subdivision (d) of section 15908.02 authorized an appeal from the court's denial of Panakosta's petition.

_____

[7] The text of subdivisions (b) through (f) of section 15908.02 is nearly identical to that employed in section 17351. (See Cal. Code com., 24B West's Ann. Corp. Code (2011 supp.) foll. § 15908.02, pp. 101–102.) Section 17351 provides members of a limited liability company with the statutory right to buy out other members who seek judicial dissolution of the company.

Section 15908.02's reference to "any member" does not affect our analysis.

Management argues that denial of a petition for buyout is not an "action of the court" from which subdivision (d) of section 15908.02 allows an appeal. In so arguing, Management relies on this court's decision in *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469 [78 Cal.Rptr.3d 874] (*Dickson*). *Dickson* does not support Management's contention.

*Dickson* involved a motion under section 17351 for buyout of another member's interest in a limited liability company. (*Dickson, supra,* 164 Cal.App.4th at p. 473.) The trial court issued an alternative decree (1) fixing the value of the interest in the company to be purchased and giving the purchasing member 90 days to buy the other member's interest, and (2) providing that the company would be dissolved if the purchase price were not tendered in a timely manner. (*Ibid.*) The purchasing member made prompt payment, and the trial court entered judgment accordingly. (*Ibid.*) The moving member appealed from the judgment, contending that the trial court erred in valuing his interest in the company. (*Ibid.*)

The purchasing member moved to dismiss the appeal on the ground that the notice of appeal was not timely filed after entry of the alternative decree. (*Dickson, supra,* 164 Cal.App.4th at p. 473.) The moving member argued that appeal lay from the final judgment after the interest was purchased or the company dissolved. This court held that appeal should have been taken from the alternative decree and dismissed the appeal. (*Ibid.*) *Dickson* states, "The riddle in this appeal arises from the imprecise use of language in section 17351, subdivision (b)(3).[8] It provides for any number of juristic activities: the court's appointment of appraisers, the order of reference to them for the purpose of ascertaining the dissenting share and setting the procedures for producing necessary evidence, the court's confirmation of the unanimous or majority appraisal award (or determination de novo of the matter), the alternative decree that directs the winding up and dissolution of the company unless the purchasing parties tender their payment in a timely manner, and a judgment on their bond for costs if they fail to act. Yet the concluding

---

[8] As we noted in footnote 7, *ante,* the language of subdivision (b) of section 17351 is nearly identical to that employed in section 15908.02. Subdivision (b)(3) of section 17351 provides: "The court shall appoint three disinterested appraisers to appraise the fair market value of the membership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. The order shall prescribe the time and manner of producing evidence, if evidence is required. The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited liability company unless payment is made for the membership interests within the time specified by the decree. If the purchasing parties do not make payment for the membership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorneys' fees, of the moving parties. *Any member aggrieved by the action of the court may appeal therefrom.*" (Italics added.)

provision for appellate review employs an entirely different term with a specific determinative: 'Any member aggrieved by *the action* of the court may appeal therefrom.' [Citation.] Considering that all the other juristic activities in section 17351, subdivision (b)(3) are preliminary to the issuance of the alternative decree (cf. *Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247–248 [170 Cal.Rptr. 656] . . . [parallel valuation process for corporations]), it is logical to conclude that the issuance of the decree is 'the' action to which the provision for appeal refers." (*Id.* at pp. 475–476.)

Management appears to argue that the trial court's *denial* of the petition for buyout under section 15908.02 did not constitute the sort of *positive* relief (in the form of an alternative decree) held to be appealable in *Dickson*. Not so.

■ *Dickson, supra*, 164 Cal.App.4th 469, holds that a party aggrieved by a ruling on a request for buyout must appeal that ruling rather than a subsequent judgment. As *Dickson* explained, "That a judgment will follow the alternative decree upon a tender does not mean the party making or accepting the tender who is dissatisfied with the valuation may await its entry to appeal that issue. This later-entered judgment is on the underlying dissolution complaint for the purpose of terminating that proceeding through denying the requested relief. This judgment is not a vehicle for raising the issues of valuation on appeal, because the dissolution proceeding itself never embraced them." (*Id.* at p. 476, italics omitted.) So too, a party aggrieved by a denial of a motion for buyout under the identical language of section 15908.02, subdivision (d), must appeal from the ruling on the motion rather than from the subsequent judgment in order to challenge the denial of the buyout request.

Panakosta would have forfeited its challenge to the denial of its buyout petition if it had delayed until entry of judgment on the cause of action for judicial dissolution. (See *Dickson, supra*, 164 Cal.App.4th at p. 476.) However, Panakosta did timely file its notice of appeal from the denial of its petition under section 15908.02. The denial of the petition is appealable, and we proceed to consider Panakosta's challenge to the trial court's ruling.[9]

---

[9] Management does not dispute that the granting of an anti-SLAPP motion is appealable under Code of Civil Procedure section 425.16, subdivision (i), which provides that "[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1."

## II

### Buyout Under Section 15908.02

Panakosta argues that it was entitled to buy out shares pursuant to section 15908.02 even after Management dismissed its cause of action for judicial dissolution of the limited partnership. We disagree.

### A. Effect of Dismissing a Cause of Action for Judicial Dissolution

To resolve Panakosta's contention that it was wrongly denied its statutory right to buy out Management's interest, we must construe section 15908.02. We apply the independent standard of review to questions of statutory interpretation. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) In discerning the meaning of section 15908.02, we proceed according to well-established principles of statutory construction.

■ " 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]' (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) 'If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to . . . apply "reason, practicality, and common sense to the language at hand." [Citation.]' (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583 [48 Cal.Rptr.3d 340].) With the consequences that will flow from our interpretation in mind, we must give the words of the statute a workable and reasonable interpretation. [Citation.]" (*Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 336 [98 Cal.Rptr.3d 847].)

Subdivision (a) of section 15908.02 allows limited partners to seek judicial dissolution "if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement." Subdivision (b) provides that "[i]n any suit for judicial dissolution" the other

partners may prevent dissolution of the business "by purchasing for cash the partnership interests owned by the partners so initiating the proceeding . . . at their fair market value."

■ Apart from section 15908.02 or a provision for buyout rights in the partnership agreement, a limited partner cannot compel the buyout of other partners. In *Cubalevic v. Superior Court* (1966) 240 Cal.App.2d 557 [49 Cal.Rptr. 698] (*Cubalevic*), this court held that "[t]here is no independent right on the part of one or more stockholders in a corporation to compel the sale to them of the shares of stock of another." (*Id.* at p. 562.)

*Cubalevic* involved a motion to buy out a shareholder who sought involuntary dissolution of a corporation under former sections 4658 and 4659. (*Cubalevic, supra*, 240 Cal.App.2d at p. 559.) These former sections allowed holders of 50 percent or more of the outstanding shares of the corporation to avoid dissolution by moving to buy out the shares belonging to partners seeking to wind up the business. (*Id.* at p. 559 & fn. 1.) In *Cubalevic*, the cause of action for dissolution was dismissed with prejudice before the purchasing shareholder was able to file a motion for buyout. (*Id.* at p. 560.) The trial court proceeded to ascertain the value of the corporation's shares, and the shareholder who dismissed the dissolution cause of action sought a writ of prohibition to prevent the buyout from proceeding. (*Id.* at p. 558.)

*Cubalevic* resulted in the granting of a writ of prohibition. (*Cubalevic, supra*, 240 Cal.App.2d at pp. 562–563.) In the absence of an independent right to buy out another shareholder, "it must follow that there could be no cause of action stated to compel such a sale whether by way of a cross-complaint or counterclaim which would survive after dismissal of the action for involuntary dissolution of the corporation in which the remedy of purchase is given. It is apparent that the [purchasing party] here could not bring or maintain a separate action against petitioner the purpose of which would be to compel him to sell his stock to them. Under these circumstances, the remedy provided the [purchasing party] ·under the provisions of section 4658 and section 4659 of the Corporations Code is ancillary to *and is dependent upon the existence of the action to compel the involuntary dissolution of the corporation, and upon the dismissal of such action there is nothing left against which the ancillary remedy may be asserted or upon which it may be applied.*" (*Id.* at p. 562, italics added.) Thus, the trial court in *Cubalevic* exceeded its jurisdiction by allowing the buyout to proceed without a pending legal action for dissolution. (*Ibid.*)

The reasoning of *Cubalevic* was reiterated in *Ovadia v. Abdullah* (1994) 24 Cal.App.4th 1100 [29 Cal.Rptr.2d 527] (*Ovadia*). In *Ovadia*, two brothers holding shares in a corporation sought to buy out the remaining shares

held by two other brothers who sought voluntary dissolution. (*Id.* at pp. 1103–1104.) The trial court granted the purchasing shareholders' petition for buyout under section 2000, which provides that "in any suit for involuntary dissolution, or in any proceeding for voluntary dissolution initiated by the vote of shareholders representing only 50 percent of the voting power, . . . the holders of 50 percent or more of the voting power of the corporation . . . may avoid the dissolution of the corporation . . . by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding . . . at their fair value. . . ." (*Id.*, subd. (a); see *Ovadia, supra,* at pp. 1103, fn. 1, 1106–1107.)

■ The *Ovadia* court reversed the granting of the petition for buyout on grounds that the voluntary dissolution proceeding was procedurally defective and unsupported by substantial evidence. (*Ovadia, supra,* 24 Cal.App.4th at p. 1108.) For lack of a valid cause of action for dissolution, the petition for buyout also could not succeed. *Ovadia* explains that "there can be no action under section 2000 to avoid the *voluntary* dissolution of a corporation through purchase of the initiating shareholders' stock unless they have, in fact, initiated a voluntary dissolution." (*Id.* at p. 1109.) Thus, under *Cubalevic* and *Ovadia,* there is no right to buy out another's business interest in the absence of an authorizing statute or contractual provision. (*Cubalevic, supra,* 240 Cal.App.2d at p. 562; *Ovadia, supra,* 24 Cal.App.4th at pp. 1108–1109.)

■ Section 15908.02 specifies that a request for buyout of interests in a limited partnership may be made only "[i]n any suit for judicial dissolution." (*Id.*, subd. (b), italics added.) The trial court lacks jurisdiction to grant a buyout under section 15908.02 when no cause of action for judicial dissolution is pending. Accordingly, the trial court in this case properly denied Panakosta's petition for buyout of Management's interest after the cause of action for judicial dissolution was dismissed.

Panakosta contends the trial court retains power to grant a petition for buyout under section 15908.02 even after the underlying cause of action for judicial dissolution has been dismissed. Specifically, Panakosta reasons that "[t]he option to buy out one's business partners in the face of a judicial dissolution action is a *right* which can be invoked and which, once invoked, cannot later be taken away by unilateral action of the party who originally sought dissolution." In so arguing, Panakosta relies on *Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522 [101 Cal.Rptr.3d 736] (*Go*).

*Go* involved a motion for buyout under section 2000, which had been filed in response to an action for involuntary dissolution of a corporation. (*Go, supra.,* 179 Cal.App.4th at p. 527.) The shareholder who was ordered to sell her shares appealed the trial court's granting of the motion for buyout on

grounds that she should have been allowed first to litigate the merits of her claim for dissolution. (*Id.* at p. 529.) The *Go* court rejected the argument and described the "inevitable outcome" of a motion for buyout under section 2000 to be "a stay of the dissolution proceedings, valuation of the corporation, and an alternative decree to either pay . . . the designated amount [for the shares subject to buyout] or [a] judgment of dissolution entered . . . ." (179 Cal.App.4th at p. 532.) With a motion for buyout under section 2000, "purchasing parties aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation, in order to preserve the corporation. If they (or the corporation) cannot pay the purchase price, or decide not to do so, then both sides must walk away, receiving pro rata the proceeds resulting from dissolution of the corporation." (179 Cal.App.4th at p. 531.) Thus, once invoked, the statutory buyout process "supplants the action for involuntary dissolution." (*Id.* at p. 530.)

The *Go* court rejected an interpretation of section 2000 that would have allowed the purchasing parties to invoke the buyout procedure as a delay tactic by abandoning the buyout request if neither the court-determined share valuation nor the prospect of dissolution seemed acceptable. As *Go* explained, "If [either buyout or dissolution] were not the inevitable outcome, then all majority shareholders facing an action for involuntary dissolution would invoke section 2000 if only for the purpose of delay, with nothing to lose other than the expense of the appraisal and attorney fees, knowing they could eventually litigate the action for involuntary dissolution on its merits. The plain language of section 2000, and the apparent legislative purpose inherent in the language of the statute, does not permit such an interpretation." (*Go, supra,* 179 Cal.App.4th at pp. 531–532.)

In *Go,* the cause of action for dissolution of the business was not dismissed. (*Go, supra,* 179 Cal.App.4th at p. 529.) To the contrary, the appellant in *Go* sought to have the dissolution cause of action adjudicated despite the pending motion for buyout. (*Ibid.*) Although *Go* refers to either dissolution or buyout as the inevitable consequence of a motion for buyout, the decision does so in the context of rejecting the contention that a third option (for litigating the underlying dissolution claim) should be grafted onto the statutory requirement that the alternative decree either allow buyout or result in dissolution. (*Ibid.*)

■ *Go* does not contradict *Cubalevic*'s and *Ovadia*'s holdings that dissial of a cause of action for dissolution leaves the trial court without jurisdiction to allow a buyout when the authorizing statute allows buyout as an alternative to dissolution. (*Go, supra,* 179 Cal.App.4th 522; *Cubalevic, supra,* 240 Cal.App.2d 557; *Ovadia, supra,* 24 Cal.App.4th 1100.) Panakosta's focus on the trial court's obligation to issue an alternative decree when presented

with a proper motion for buyout ignores the lack of a condition precedent in this case, namely, a pending cause of action for judicial dissolution.

Panakosta argues that Management lacked the prerogative to dismiss its cause of action for judicial dissolution once the petition for buyout had been filed under section 15908.02. Panakosta reasons that the right to dismiss a dissolution cause of action must be cut off when a motion for buyout is filed in order "to avoid abuse by plaintiffs who, when led to suppose a decision would be adverse, would prevent such decision by dismissing without prejudice and refiling, thus subjecting defendant and the courts to wasteful proceedings and continuous litigation." In so arguing, Panakosta acknowledges Code of Civil Procedure section 581, subdivision (c), which provides that "[a] plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."

■ Under Code of Civil Procedure section 581, a plaintiff generally has an unfettered right to dismiss a cause of action before commencement of trial. (See *Wells v. Marina City Properties, Inc.* (1986) 29 Cal.3d 781, 789 [176 Cal.Rptr. 104, 632 P.2d 217] (*Wells*); see also *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 785 [191 Cal.Rptr. 8, 661 P.2d 1088] [collecting authority that a plaintiff may dismiss a cause of action prior to a court's ruling on demurrer to the complaint].) Panakosta does not assert that trial commenced before Management dismissed its cause of action for judicial dissolution. Instead, Panakosta asserts that "a plaintiff's right to dismiss the action may be cut off where a dispositive motion is pending, before any ruling thereon, *if* the dismissal appears to be a tactical ploy." (Italics added.) There is no evidence to support Panakosta's concern that the dismissal was a tactical ploy. Management dismissed its cause of action for judicial dissolution with prejudice. Thus, Management cannot refile its judicial dissolution action after the denial of the buyout petition.

Management had a right to dismiss the cause of action for judicial dissolution because trial had not yet commenced. Our Supreme Court has noted that prior to commencement of trial "a plaintiff's right to a voluntary dismissal . . . appears to be absolute." (*Wells, supra,* 29 Cal.3d at p. 784.) Panakosta contends that the filing of a section 15908.02 buyout petition constitutes a "dispositive motion" that has the same effect as commencement of trial so that the court's power to rule on a cause of action cannot be cut off by a voluntary dismissal.

Granted, "[i]n the wake of *Wells,* a substantial and fairly complex body of case law has grown up involving when—and when not—a plaintiff's statutory right to dismiss pursuant to [Code of Civil Procedure] section 581,

subdivision (b)(1) is cut off by the presence of some impending 'dispositive' procedure." (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 194 [55 Cal.Rptr.3d 424] (*Franklin Capital*).) *Franklin Capital* involved a question of whether a plaintiff may avoid dismissal of a case by voluntarily dismissing a complaint (or individual cause of action) in order to avoid a case-ending ruling. (See *id.* at pp. 195–200.) By avoiding a dispositive ruling, a plaintiff may preserve the opportunity to refile an otherwise doomed complaint. To avoid this abusive practice, the *Franklin Capital* court surveyed the case law and distilled the rule that "[w]hen the dismissal could be said to have been taken [¶] . . . in the light of a public and formal indication by the trial court of the legal merits of the case, or [¶] . . . in the light of some procedural dereliction by the dismissing plaintiff that made dismissal otherwise *inevitable*, then the voluntary dismissal is ineffective." (*Id.* at p. 200.)

Panakosta's filing of a petition for buyout under section 15908.02 constituted neither an indication by the court of the legal merits of Management's cause of action for dissolution nor did it reveal any fatal procedural problem with Management's case. Consequently, Management had the right to dismiss its cause of action for judicial dissolution.

 In sum, Management's dismissal of the dissolution cause of action deprived the trial court of jurisdiction to grant the petition for buyout under section 15908.02. (See *Cubalevic, supra,* 240 Cal.App.2d at p. 562; *Ovadia, supra,* 24 Cal.App.4th at pp. 1108–1109.)

### B. Petition for Buyout as a Separate Action

Panakosta contends the trial court lacked authority to deny its petition for buyout under section 15908.02 because the petition was filed as a new action separate from the judicial dissolution action. Panakosta reasons that the filing of a separate action for buyout allowed the trial court to retain jurisdiction to order buyout even after Management dismissed the cause of action for judicial dissolution in the related case. We disagree.

The trial court denied Panakosta's petition for buyout under section 15908.02 because no voluntary dissolution was currently pending before the court. In addition, the trial court ruled that under the one-action rule or primary rights doctrine, "[t]he related civil action [for judicial dissolution was] the proper forum for any request to buy-out shares." The trial court concluded that "[n]o legitimate reason exists to have filed this separate special proceeding, it should have been filed as part of the related civil action."

 The trial court's ruling reflects the well-established principle that "a party cannot by negligence or design withhold issues and litigate them in

successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion." (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393 [289 P.2d 214].) Thus, " '[a] single cause of action cannot be split either as to relief demanded or grounds on which recovery is sought and two or more actions brought thereon, and to do so makes pleas in abatement or of res judicata available respectively against all actions other than the one first commenced or on which judgment is first rendered.' This principle is fundamental and has been consistently applied by our courts." (*Alston v. Goodwin* (1959) 174 Cal.App.2d 16, 19 [343 P.2d 993].)

■ As explained in part IIA., *ante*, the right of buyout under section 15908.02 is dependent upon a cause of action for judicial dissolution. A request for buyout under section 15908.02 does not constitute a cause of action independent from a judicial dissolution action. Instead, buyout represents an alternative to winding up a business when "it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement." (§ 15908.02, subd. (a).)

Thus, regardless of whether the buyout petition was properly filed as a separate action, the dismissal of the judicial dissolution action is dispositive and deprived the trial court of jurisdiction to decide the buyout petition under section 15908.02.

Panakosta asserts that subdivision (c) of section 15908.02 expressly authorizes a separate buyout action by providing that "the court, upon application of the purchasing parties, either in the pending action *or in a proceeding initiated in the superior court of the proper county by the purchasing parties*, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties." (Italics added.) Management disputes this reading of section 15908.02 and distinguishes between voluntary and involuntary dissolutions. In the case of an involuntary dissolution requiring judicial action, the statutory language requires a buyout action to be filed in the judicial dissolution action. In support of this argument, Management takes us through the reiteration of buyout provisions originating with section 2000 and resulting in section 15908.02. There is no doubt that the conversion of language from a statute governing buyout of shareholders in a corporation to a statute applying to members of a partnership was imperfect.[10] But given the lack of a pending judicial dissolution action, we do not need to decide whether the

---

[10] For example, subdivision (d) of section 15908.02 retains the language of section 17351 authorizing any aggrieved "member" to appeal—even though limited partnerships do not have members. Subdivision (c)(3) of section 15908.02 refers to itself when authorizing recovery of expenses "if the expenses are recoverable under paragraph (3)." Section 15908.02, subdivision (c)'s reference to "a proceeding initiated in the superior court of the proper county by the

trial court was correct in concluding that Panakosta was precluded from seeking buyout under section 15908.02 in an action separate from the judicial dissolution case. Without a pending judicial dissolution action, the trial court was without jurisdiction to allow the buyout petition to proceed.

## III

### *Anti-SLAPP Motion*

Panakosta contends the trial court erred in granting Management's anti-SLAPP motion because Code of Civil Procedure section 425.16 does not apply to "special proceedings" such as a petition for buyout under section 15908.02. We disagree with Panakosta's reasoning but nonetheless conclude that the trial court erred in granting the anti-SLAPP motion.

### *A. Protecting the Right of Petition*

The Legislature enacted the anti-SLAPP law in response to "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a).) The anti-SLAPP statute facilitates the quick dismissal of meritless claims aimed at chilling the First Amendment right of petition. As pertinent to this case, subdivision (b)(1) of section 425.16 provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Under the anti-SLAPP statute, an " 'act in furtherance of a person's right of petition . . . under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (Code Civ. Proc., § 425.16, subd. (e).) The right of petition encompasses the filing of a legal action and the requesting of an injunction. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*); *Thomas v. Quintero, supra,* 126 Cal.App.4th at pp. 651–652.) The anti-SLAPP statute protects petition-related activity regardless of whether the action was filed to vindicate an issue of public interest. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*);

---

purchasing parties" appears to be an artifact from section 2000, which addressed both voluntary (nonjudicial) dissolutions and involuntary (judicial) dissolutions.

*Briggs, supra,* at p. 1116.) ▮▮▮ Thus, the filing of an action for judicial dissolution of a limited partnership constitutes activity protected under Code of Civil Procedure section 425.16.

▮▮▮ Even so, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under [Code of Civil Procedure] section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' (*Computer Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 [113 Cal.Rptr.2d 625]; see also *Briggs, supra,* 19 Cal.4th at p. 1114 ['arise from' means 'based upon'].)" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).)

In *Cotati,* the City of Cotati filed an action in state court for a declaration that its rent control ordinance passed constitutional muster. (*Cotati, supra,* 29 Cal.4th at p. 72.) The city filed the action even though owners of a mobilehome park had already filed a challenge to the constitutionality of the ordinance in federal court. After bringing the state court action, the city asked the federal court to dismiss the owners' action on abstention grounds. (*Ibid.*) The owners in turn filed an anti-SLAPP motion in state court. (*Id.* at pp. 72–73.) The city opposed the motion, but conceded that "its purpose in filing the state court action was to gain a more favorable forum in which to litigate the constitutionality of its mobilehome park rent stabilization ordinance." (*Id.* at p. 73.) The trial court granted the anti-SLAPP motion, which the high court held was improperly granted. (*Id.* at pp. 73, 74, 80.)

▮▮▮ The *Cotati* court concluded that the mobilehome park owners' right of petition was not undermined even though the state court action focused on the same underlying dispute. As the high court explained, "To construe 'arising from' in [Code of Civil Procedure] section 425.16, subdivision (b)(1) as meaning 'in response to,' . . . would in effect render all cross-actions potential SLAPP's. We presume the Legislature did not intend such an absurd result. (See generally *People v. Mendoza* (2000) 23 Cal.4th 896, 912, fn. 7 [98 Cal.Rptr.2d 431, 4 P.3d 265].) Absurdity aside, to suggest that all cross-actions arise from the causes of action in response to which they are pled would contravene the statutory scheme governing cross-complaints. (See Code Civ. Proc., § 426.10, subd. (c) [defining 'related cause of action']; *id.,* § 426.30 [compulsory cross-complaints]; *id.,* § 428.10 [permissive cross-complaints].) The Legislature expressly has provided that a cross-action may 'arise[] out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges' (*id.,* § 426.10, subd. (c); see also *id.,* § 428.10, subd. (b)(1)), rather than out of that cause of action itself."

(*Cotati, supra,* 29 Cal.4th at p. 77.) Thus, *Cotati* teaches that cross-complaints and related legal actions do not undermine the right of petition simply because they respond to already filed complaints or seek alternative legal remedies.

### B. Whether Buyout Under Section 15908.02 Infringes on the Moving Parties' Right of Petition

A motion for buyout under section 15908.02 constitutes an alternative remedy allowing limited partners to avoid dissolution of a business they wish to continue. (See pt. IIA., *ante.*) Although a buyout proceeding under section 15908.02 stays the dissolution cause of action, it does not deprive plaintiffs of the opportunity to seek judicial relief for an unworkable partnership. Instead, section 15908.02 provides the defendants in a judicial dissolution proceeding with an alternative remedy. Nothing in the buyout procedure of section 15908.02 barred Management from judicial redress of its grievance about the partnership. Section 15908.02 provides for a buyout of other partners' interests to "avoid the dissolution of the limited partnership." (*Id.,* subd. (b).) Consequently, the trial court erred in ruling that Panakosta's petition for buyout constituted an action infringing on Management's right of petition.

The trial court mistakenly concluded that the anti-SLAPP statute applied because Panakosta's "[p]etition was clearly filed *in response* to the cause of action for dissolution of partnership contained in the related civil action . . . ." (Italics added.) If the trial court were correct, *all* motions to buy out under section 15908.02 would be subject to anti-SLAPP motions because all such buyout requests necessarily "arise out of" the petition-related activity of seeking judicial dissolution. The Legislature did not intend to subject every motion for a buyout under section 15908.02 to the additional burden of opposing motions to strike under Code of Civil Procedure section 425.16.

Moreover, the mere fact that Panakosta's petition for buyout was filed in response to petition-related activity did not bring it within the purview of the anti-SLAPP statute. (*Cotati, supra,* 29 Cal.4th at pp. 76–77.) As our Supreme Court has explained, "a claim filed in response to . . . litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 924 [116 Cal.Rptr.2d 187] . . . .)" (*Cotati, supra,* at p. 78.) Panakosta's petition for buyout availed itself of an expressly conferred statutory remedy.

Management argues that the anti-SLAPP motion was properly granted because Panakosta failed to show that it was likely to succeed in raising and

tendering the money for the buyout. In Management's view, the anti-SLAPP statute "helps to ensure that the non-dissolving party is exercising his 'right' to avoid dissolution in good faith by requiring a *prima facie* showing of intent and means to consummate the proposed purchase transaction."

■ Code of Civil Procedure section 425.16 safeguards the right of petition, not a right to verify the good faith of parties requesting to buy out business interests. (See *Navellier, supra*, 29 Cal.4th at p. 90; *Briggs, supra*, 19 Cal.4th at p. 1116.) The anti-SLAPP statute does not operate to graft onto section 15908.02 a requirement that a purchasing party demonstrate the financial means to complete the buyout and actual intent to do so before the trial court may issue an alternative decree. Section 15908.02, subdivision (c)(3), already protects moving parties from gamesmanship by requiring purchasing parties to post a bond for attorney fees likely to be incurred by the moving parties.

■ Management argues that the trial court's anti-SLAPP ruling also correctly concluded that section 15908.02's provision for buyout was superseded by the partnership agreement's provision for buyouts. We disagree. Section 15908.02, subdivision (b), provides that other limited partners "may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the proceeding . . . at their fair market value" in "*any* suit for judicial dissolution." (Italics added.) When Management elected to seek judicial dissolution of the partnership, it triggered Panakosta's option of seeking the judicial remedy of buyout under section 15908.02.

■ A partnership agreement's provision for nonjudicial buyout cannot prevent a purchasing party from seeking buyout under section 15908.02. Indeed, section 15901.10, subdivision (b)(9), prohibits partnership agreements from "[e]liminat[ing] the power of a court to decree dissolution in the circumstances specified in subdivision (a) of Section 15908.02." Just as a partnership agreement may not eliminate resort to judicial dissolution under section 15908.02, it also may not truncate the trial court's power to grant alternative relief under that section. Thus, the limited partnership agreement did not prevent Panakosta from seeking buyout under section 15908.02 so long as a cause of action for judicial dissolution was pending.

At oral argument, Management noted that the prohibition imposed by section 15901.10, subdivision (b)(9), on partnership agreements eliminating the power of a court in a judicial dissolution proceeding does not specifically refer to subdivision (b) of section 15908.02. Thus, Management argued that a partnership agreement may disallow partners from seeking to avail themselves of the statutory buyout option for judicial dissolutions of limited

partnerships. In so arguing, Management did not assert that the partnership agreement *in this case* specifically waived the statutory buyout option in subdivision (b) of section 15908.02. Indeed, Management could not have made this assertion because the 2003 partnership agreement preceded the enactment of section 15908.02 by several years. (See Stats. 2006, ch. 495, § 20, operative Jan. 1, 2008.)

██ Moreover, Management's argument runs afoul of the language of subdivision (b) of section 15908.02, which expressly states that it applies "[i]n *any* suit for judicial dissolution." (Italics added.) The Legislature did not carve out an exception for limited partnership agreements that might seek to avoid the buyout option triggered in judicial dissolution proceedings. Accordingly, we reject the contention that the limited partnership agreement precluded the application of subdivision (b) of section 15908.02.

In view of our conclusion Panakosta's request for buyout did not undermine Management's right of petition, we do not reach the anti-SLAPP statute's secondary question of whether Panakosta "established that there is a probability that [it] will prevail on the claim" (Code Civ. Proc., § 425.16, subd. (b)(1)). (See *Cotati, supra,* 29 Cal.4th at pp. 80–81.) Based on our conclusion, the anti-SLAPP statute did not apply to Panakosta's petition for buyout under section 15908.02.

### C. Attorney Fees and Costs for the Anti-SLAPP motion

██ A party who prevails on an anti-SLAPP motion is generally entitled to recover attorney fees and costs. (Code Civ. Proc., § 425.16, subd. (c)(1).) Here, Panakosta was required to pay $38,784.50 in fees and costs to Management as the prevailing party on the anti-SLAPP motion. Because we conclude that the trial court erred in granting the anti-SLAPP motion, we reverse the award of fees and costs to Management.

## DISPOSITION

The order denying Panakosta Partners, LP, Diversified Foundation, LP, Sharon Scofield, as trustee of the Scofield Family Trust, and Lance Leffler's petition for the appointment of appraisers and for a stay of the related proceeding under Corporations Code section 15908.02 is affirmed. The order

granting the anti-SLAPP motion (Code Civ. Proc., § 425.16) and awarding attorney fees and costs to Hammer Lane Management, LLC, Richard and Ravinder Samra Family Trust, and Bernard C. Kooyman and Donna K. Kooyman Revocable Living Trust is reversed. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3), (5).)

Raye, P. J., and Hull, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 4, 2012, S197687.