Filed 4/30/25  Tilden v. OCR-GP CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BRADLEY W. TILDEN, as Successor in Interest to B. Gedney Tilden, et al.<br><br>    Plaintiffs, Cross-defendants and Respondents,<br><br>    v.<br><br>OCR-GP, LLC, et al.<br><br>    Defendants, Cross-complainants and Appellants. | D085386, D085387<br><br><br><br>(Super. Ct. No. CVRI2105005) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of Riverside County, Carol A. Greene, Judge.  Dismissed.

Thompson & Colegate, Susan Knock Beck, John A. Boyd and Craig M. Marshall, for Plaintiffs, Cross-defendants and Appellants Bradley W. Tilden et al.

Kessler & Seecof, Daniel J. Kessler and Benjamin R. Seecof, for Defendants, Cross-complainants and Appellants OCR-GP, LLC, et al.

## INTRODUCTION

Two brothers, B. Gedney Tilden (Gedney) and M. William Tilden (Bill), disagreed over how their family cattle ranch should be managed.  Following

years of disagreement, Gedney filed a complaint to dissolve and wind up the limited partnership that owned and operated the ranch and for an accounting. Bill responded with a cross-complaint for declaratory relief.

After a four-day bench trial, the trial court ordered the dissolution of the partnership. In a statement of decision attached to the minute order, the court gave Bill 60 days to buy out Gedney's interests at fair market value and stated, it "will set a return hearing date to order further relief" pursuant to California Corporations Code[1] section 15908.02 once the 60 days has passed. Ninety days later, the court entered a formal judgment decreeing the partnership dissolved and denying Bill's request for declaratory relief. It later granted in part and denied in part Bill's motion to tax costs. The court has not ruled on Gedney's second cause of action for a full accounting of the partnership's activities or issued a wind-up decree.

Bill filed three notices of appeal—from the minute order and statement of decision, formal judgment, and the order taxing costs, which we consolidated for review. We now dismiss the consolidated appeals because judgment is not final and there is no appealable interlocutory order before us.

BACKGROUND

In 1985, Burton W. Tilden purchased an 8,400-acre cattle ranch in O'Neals, California. In 1999, he formed Oak Crest Ranch, LP (partnership) under a limited partnership agreement (partnership agreement) to own and operate the ranch. Following Burton's death in 2007, his sons Gedney and Bill were admitted as general partners pursuant to the partnership agreement.

---

[1] All further undesignated statutory references are to the California Corporations Code.

2

In 2017, Gedney and Bill executed an amendment to the partnership agreement to specify the current ownership structure of the partnership. Relevant here, Gedney owned BC Tilden Holdings, LLC and Bill owned OCR-GP, LLC. The ownership structure was specified as follows: As limited partners, 33 percent owned by Gedney's BC Tilden Holdings, LLC, 33 percent owned by Bill's OCR-GP, LLC, and 33 percent owned by Bill, as trustee of the Burt and Mary Tilden Trust. As general partners, 0.33 percent owned by Gedney's BC Tilden Holdings, LLC, and 0.667 percent by Bill's OCR-GP, LLC. Later in 2017, Gedney and Bill filed an amended certificate of limited partnership with the Secretary of State, confirming each and their respective LLCs as new general partners, and removing Gedney and Bill as trustees of the Burt and Mary Tilden Trust as general partners.

In November 2021, Gedney and BC Tilden Holdings, LLC (together, plaintiffs) filed a complaint against Bill, OCR-GP, LLC, the partnership, and Bill as trustee for the Burt and Mary Tilden Trust (together, defendants) asserting a first cause of action for involuntary dissolution and winding up of the partnership and a second cause of action for a full accounting of the partnership's activities. Generally, plaintiffs alleged defendants exercised unilateral control of the partnership by hiring employees, making purchases, and contracting on behalf of the partnership and denied plaintiffs access to the partnership's reports, books and records, and tax returns.

In January 2022, defendants filed a cross-complaint for declaratory relief that they were the sole serving general partner, that plaintiffs were not entitled to certain reports and financial information or to manage the partnership, and that no cause exists for dissolution or for an accounting.

The trial court conducted a four-day bench trial in June 2023. After taking its decision under submission, the court issued a minute order and

3

statement of decision on August 4, 2023. In the minute order, the court ruled: "After weighing the evidence presented at trial, this Court finds that it is not reasonably practicable for the [partnership] to carry on its activities in conformity with the [p]artnership [a]greement. Plaintiffs have established, by a preponderance of evidence, that [d]efendants wrongfully excluded [p]laintiffs from managing the [p]artnership. For years, [d]efendants have deprived [p]laintiffs of their rights under the [p]artnership [a]greement, including access to financial records. As such, this Court orders the dissolution of the [p]artnership pursuant to . . . section 15908.02. Judgment on Complaint for Partnership and Governance (Over 25,000) of [plaintiffs] against [defendants]."

In a detailed 14-page statement of decision attached to the minute order, the trial court elaborated on its factual findings in favor of plaintiffs and the evidence on which it relied. It restated its conclusion that "irreconcilable differences" had arisen among the general partners such that "it is not reasonably practicable for the [p]artnership to carry on its activities in conformity with the [p]artnership [a]greement." In a paragraph entitled "Remedies," the court ruled: Bill, "as manager of OCR-GP, LLC and general partner of Oak Crest Ranch, LP, will have sixty (60) days from today's ruling to purchase the General Partnership and Limited Partnership interests of [Gedney's] BC Tilden Holdings, LLC at fair market value. Once the sixty (60) days has passed, the court will set a return hearing date to order further relief per . . . section 15908.02(b)."

On November 2, 2023, the trial court entered a "Judgment on Plaintiff's Complaint." The judgment stated it was not reasonably practicable for the partnership to carry on its activities in conformity with the partnership agreement due to defendants' wrongful exclusion of plaintiffs from managing

4

the partnership; defendants' request for declaratory relief is denied as not supported by the trial evidence; and judgment shall be entered in plaintiffs' favor "as to the verified Complaint for Partnership and Corporate Governance (Over 25,000)"[2]; and the partnership shall be dissolved pursuant to section 15908.02. The same day, the court entered a minute order to clarify that judgment on defendants' cross complaint for declaratory relief "is granted as stated in the Judgment filed 11/02/2023."

On February 1, 2024, the trial court entered an order granting in part and denying in part defendants' motion to strike and/or tax costs, awarding plaintiffs a total of $7,730.50.

Defendants filed three notices of appeal in Division Two of this court—from the August 4, 2023 minute order and statement of decision, from the November 2, 2023 judgment, and from the February 1, 2024 order taxing costs. In April 2024, Division Two consolidated the appeals.

On August 20, 2024, plaintiffs filed a motion to dismiss the consolidated appeals which defendants opposed.[3] Division Two deferred the motion to dismiss to the merit's panel and, after briefing concluded in November 2024, the matter was transferred to Division One on December 30.

---

[2] As defendants noted in their answer to the complaint, and our review of the record confirms, there is no verified complaint. As neither party has asserted otherwise, we construe this reference in the judgment to mean the operative complaint.

[3] Plaintiffs ask us to take judicial notice of the trial court's register of actions. We deny the request as it is duplicative of documents already contained in the appellate record. (See *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 406, fn. 12.)

DISCUSSION

Relying on *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 964
(*Kinoshita*), plaintiffs argue a judgment directing the dissolution of a
partnership is not final and the August 4, 2023 order/statement of decision
and November 2, 2023 judgment are not final for the additional reason that
they "do not reflect the winding up and accounting [plaintiffs] prayed for."
Because there is no final judgment, they further assert the order on their
motion to tax costs is not appealable.  We agree on all their contentions.

I.

*The November 12, 2023 Judgment is Interlocutory and Not Appealable*

"A reviewing court has jurisdiction over a direct appeal only when there
is (1) an appealable order or (2) an appealable judgment."  (*Griset v. Fair
Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  "The right to appeal is
wholly statutory."  (*Dana Point Safe Harbor Collective v. Superior
Court* (2010) 51 Cal.4th 1, 5 (*Dana Point*).)  Code of Civil Procedure section
904.1 set forth appealable judgments and orders.  "Chief among them is a
'judgment' that is not interlocutory, [that is,] a final judgment."  (*Dana Point*,
at p. 5.)  "A judgment is the final determination of the rights of the parties
(Code Civ. Proc., § 577) when it terminates the litigation between the parties
on the merits of the case and leaves nothing to be done but to enforce by
execution what has been determined."  (*Ibid*.)  "It is not the form of the decree
but the substance and effect of the adjudication which is determinative.  As a
general test, which must be adapted to the particular circumstances of the
individual case, it may be said that *where no issue is left for future
consideration except the fact of compliance or noncompliance with the terms of
the first decree, that decree is final,* but where anything further in the nature

6

of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." (*Ibid.* [cleaned up].)

As our high court has explained, "the purpose of the final judgment rule is to prevent piecemeal disposition and multiple appeals which tend to be oppressive and costly. Interlocutory appeals burden the courts and impede the judicial process in a number of ways: (1) They tend to clog the appellate courts with a multiplicity of appeals[.] (2) Early resort to the appellate courts tends to produce uncertainty and delay in the trial court[.] (3) Until a final judgment is rendered the trial court may completely obviate an appeal by altering the rulings from which an appeal would otherwise have been taken. (4) Later actions by the trial court may provide a more complete record which dispels the appearance of error or establishes that it was harmless. (5) Having the benefit of a complete adjudication . . . will assist the reviewing court to remedy error (if any) by giving specific directions rather than remanding for another round of open-ended proceedings." (*Dana Point, supra*, 51 Cal.4th at p. 5 [cleaned up].)

Applying these general test and principles enunciated by our high court, the court in *Kinoshita* dismissed an appeal from a judgment directing the dissolution of a partnership and sale of its assets by a receiver, concluding "such a judgment is interlocutory" and not appealable. (*Kinoshita, supra*, 186 Cal.App.3d at pp. 961, 968.) In doing so, the court observed partnership dissolutions, by their nature, are "serial aspect actions involving provisional remedies" before final judgment. (*Id.* at p. 963.) For that reason, "[a]pplication of the final judgment rule has proven especially difficult in partnership dissolutions and similar proceedings because they tend to require a series of adjudications by the trial court. Typically, the court must first determine the weighty threshold questions on which the

7

parties' rights and obligations depend, such as whether a partnership was formed and what assets were acquired. The court may then be called upon to order one or more provisional or special remedies which necessarily occur in a progression of steps culminating in a final decree which settles the actions taken under the earlier rulings." (*Ibid.*)

The judgment from which the appeal was taken in *Kinoshita* decreed "(1) plaintiff owns a 31.43 percent interest in the [limited] partnership [that owned and operated an apartment building]; the partnership is 'ordered dissolved'; (3) the receiver, subject to the court's approval, will sell the property, pay the partnership's debts, distribute the remaining assets, and dissolve the partnership; (4) defendants are entitled to certain credits but not others; (5) defendants will bear 85 percent of the receiver's expenses and fees; (6) at the time of distribution, plaintiff will recover his court costs from defendants' share of assets; (7) certain leases entered into by defendants are null and void." (*Kinoshita, supra*, 186 Cal.App.3d at p. 962.) Importantly, the judgment also decreed "(8) the court will retain jurisdiction 'for all purposes necessary to insure compliance with this Judgment and dissolution and distribution of the partnership assets.' " (*Ibid.*)

Looking to the substance and effect of the adjudication, the court concluded the *Kinoshita* judgment was not a final determination of the rights of the parties because it "does not provide a complete formula for distribution of the proceeds of sale, but at most identifies some of the factors and principles which will go into that distribution. Nor does it determine the interests of the individual defendants. Even if these deficiencies might be cured by reference to the partnership agreement or the applicable statutes (see Corp. Code, §§ 15040, 15523, 15684), the judgment does not determine the manner in which the expenses assessed to defendants will be allocated

8

among them." (*Kinoshita, supra*, 186 Cal.App.3d at p. 965.)  Additionally, "the trial court expressly reserved power over the conduct of the sale" and reserved jurisdiction "for all purposes necessary" to ensure compliance with the dissolution and distribution of the partnership assets.  (*Ibid.*)

Like the *Kinoshita* judgment, the trial court's judgment here does not terminate the proceedings below by " 'completely disposing of the matter in controversy.' " (*Kinoshita, supra*, 186 Cal.App.3d at p. 963.)  Plaintiffs' complaint requested "a decree of winding up and dissolving the [p]artnership and distributing assets as provided by law."  But the judgment decrees only that the partnership is dissolved.  It is silent as to how the court will accomplish that dissolution, including for example its determinations on settling debts and distribution of assets.  The unresolved issues here are more numerous than the deficiencies in the *Kinoshita* judgment, which at least identified some of the factors and principles that would go into how the dissolution would be accomplished but still failed to provide a complete formula for assets distribution.  (*Id.* at p. 965.)  Surely, if the *Kinoshita* judgment failed to satisfy the one final judgment rule, so too must the judgment here.  Moreover, the judgment here does not include a wind-up decree or resolve plaintiffs' second cause of action for a full accounting of the partnership's activities and thus it cannot be said to have terminated the litigation between the parties on the merits of the case.  (Code Civ. Proc., § 577; *Dana Point, supra*, 51 Cal.4th at p. 5.)  For these reasons, the November 2, 2023 judgment dissolving the partnership is interlocutory and not appealable.  (*Kinoshita*, at p. 968.)

We are not persuaded to the contrary by defendants' arguments. Defendants contend the November 2, 2023 judgment dissolving the partnership pursuant to section 15908.02, subdivision (a), is final and "no

9

essential judicial act remains to be done."  They argue this is because section 15908.03 "provides that the subsequent winding up of the limited partnership is self-executing, and intended to occur without further court intervention, judicial act, or modification of the judgment" and "any court supervision of a winding up is a *discretionary* remedy made upon a *separate* and subsequent application to a court."  Defendants point us to no authority that requires a "separate and subsequent application" to the court for a wind up, ignoring that plaintiffs' complaint *did* request a decree for a winding up.

Finally, to avoid *Kinoshita*, defendants argue the case is inapposite and "pre-date . . . section 15908.02[, subdivision] (a) and its related statutory scheme by decades."  Defendants do not, however, explain what effect if any section 15908.02, subdivision (a), has on the *Kinoshita* holding.  An undeveloped argument is a forfeited one.  (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15 [failure to develop an argument forfeits that point].)  Even if not forfeited, we see nothing in the enactment of section 15908.02 that changes *Kinoshita's* holding that a judgment ordering dissolution is not a final appealable judgment.

## II.

### *The August 4, 2023 Order is Not Directly Appealable*

The August 4, 2023 minute order is not final and appealable because it directed the future preparation and filing of a judgment.  (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 101 ["A minute order that directs the preparation of a formal written order is not itself appealable."].)  Defendants, however, claim "the trial court ordered a buy-out pursuant to . . . section 15908.02, subdivision (b)" and the order is therefore directly appealable under section 15908.02, subdivision (d).  We disagree.

10

Where, as here, a court orders dissolution of a partnership, section 15908.02, subdivision (b), provides "the other partners may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the [dissolution] proceeding (the 'moving parties') at their fair market value."

Subdivision (c) of section 15908.02 then provides, "If the purchasing parties (1) elect to purchase the partnership interests owned by the moving parties, (2) are unable to agree with the moving parties upon the fair market value of the partnership interests, and (3) give bond with sufficient security to pay the estimated reasonable expenses, including attorneys' fees, of the moving parties if the expenses are recoverable under subdivision (d), the court, *upon application of the purchasing parties*, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties."  (Italics added.)

If such an application is made by the purchasing parties, pursuant to subdivision (d) of section 15908.02:  "The court shall appoint three disinterested appraisers to appraise the fair market value of the partnership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value.  The order shall prescribe the time and manner of producing evidence, if evidence is required.  The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited partnership unless payment is made for the partnership interests within the time specified by the decree.  If

11

the purchasing parties do not make payment for the partnership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorneys' fees, of the moving parties. *Any member aggrieved by the action of the court may appeal therefrom*." (Italics added.)

It is clear from the plain language of section 15908.02 that the statutory right of appeal under subdivision (d) is available to a party aggrieved by a court's action on a buyout petition filed to avoid dissolution. (See *Panakosta, Partners, LP v. Hammer Lane Management LLC* (2011) 199 Cal.App.4th 612, 625 (*Panakosta*).) Here, the trial court's August 4, 2023 order is not an action on a buyout petition, because defendants have not filed one.

In *Panakosta*, a case cited by defendants, majority owners in a limited partnership filed an action for dissolution. Minority owners, seeking to avoid the dissolution, petitioned for a buyout of the majority owners' interest in the business pursuant to section 15908.02. (*Panakosta, supra*, 199 Cal.App.4th at pp. 620–621.) The minority owners filed a concurrent motion for appointment of appraisers to value the partnership and for a stay of the related dissolution proceeding. (*Id.* at p. 621.) The trial court denied the buyout petition and minority owners appealed. (*Ibid.*) The appellate court held "subdivision (d) [of section 15908.02] . . . expressly confers a statutory right to appeal from an action of the court *on a request for buyout* of interests by partners who seek judicial dissolution of a partnership." (*Id.* at p. 625, italics added.) Because minority owners were "aggrieved by the trial court's denial of the motion to buy out the majority partners' interests under section 15908.02," the appeal from the denial order was authorized by subdivision (d). (*Id.* at p. 625.)

12

Defendants have not filed a petition or request for buyout of plaintiffs' interests in the partnership. To fit their appeal under the statutory right of subdivision (d), they characterize the trial court's order as one "requiring" defendants to buyout plaintiffs' interest pursuant to section 15908.02, subdivision (b). We disagree with this characterization. The court's order provided defendants "will have sixty (60) days from today's ruling to purchase . . . [plaintiffs'] interests . . . at fair market value." Fairly read, the court provided defendants with an opportunity to avoid dissolution by the filing of a buyout petition. And had defendants filed a buyout petition and were subsequently aggrieved by the court's action on that buyout petition, they would have a statutory right to appeal the court's action. But, again, they have not. Consequently, the court's August 4, 2023 order for dissolution does not trigger the statutory right of appeal under section 15908.02, subdivision (d).

### III.

*The February 1, 2024 Order Awarding Costs is Not Appealable*

Because the November 2, 2023 judgment is not a final judgment, we also lack jurisdiction to review the subsequent February 1, 2024 order granting in part and denying in part plaintiffs' motion to tax costs. (See *Lacey v. Bertone* (1949) 33 Cal.2d 649, 654 [An order on a motion to tax costs is appealable only when it is made after final judgment.]; see Code Civ. Proc., § 904.1(a)(2).)

### IV.

*We Decline to Exercise Our Discretion to Treat the Appeal As a Writ Petition*

Should we determine that we lack jurisdiction to decide any portion of their consolidated appeals, defendants ask that we treat their opposition to the motion to dismiss as a petition for extraordinary writ relief. When an

13

appellant does not seek writ relief in the first instance, the question is not whether we may, but whether we *should* treat the appeal as a writ petition. As our Supreme Court has explained, although we do have the power to treat an appeal from a nonappealable order as a petition for writ of mandate, "we should not exercise that power except under unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401; accord *San Joaquin County Dept. of Child Support Services v. Winn* (2008) 163 Cal.App.4th 296, 300.)

We are sympathetic that plaintiffs have incurred the expense of responding to the merits of the appeal while their motion to dismiss was pending. However, as plaintiffs also recognize, resolving this appeal on the merits now is not likely to avoid piecemeal disposition and multiple appeals that the one final judgment rule is intended to prevent. (See *Dana Point, supra*, 51 Cal.4th at p. 5 [cleaned up].) Thus, because we discern no unusual or extraordinary circumstance, we decline to treat the appeals as petitions for writ of mandate. (Cf. *Olson v. Corey, supra*, 35 Cal.3d at pp. 400–401 [exercising discretion to treat appeal as a petition for extraordinary writ to avoid unnecessary trial proceedings because the briefs and record on appeal were adequate, the appealability of the order was not clear, and all parties urged the court to reach the merits]; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746 [sufficiently unusual circumstances may be present where the trial court made a substantive error and judicial economy would not be served by deferring resolution until final judgment].)

DISPOSITION

The consolidated appeals are dismissed. Plaintiffs are entitled to their costs on appeal.

DO, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.