[Civ. No. 8135.   Third Dist.   Mar. 24, 1953.]

THE ALHAMBRA-SHUMWAY MINES, INC. (a Corporation), Respondent, v. ALHAMBRA GOLD MINE CORPORATION (a Corporation), Appellant.

Entenza & Gramer, Jerome Weber and Jess Whitehill for Appellant.

Daniel J. Higgins for Respondent.

PEEK. J.—This is an appeal by defendant from an order appointing a receiver pendente lite of certain real and personal property consisting of three mining properties owned by plaintiff and situated in El Dorado county, which provided in part that "said receiver shall shut down all operations of said mine and mill and shall not permit any person to trespass upon said property."

Defendant's attack thereon is essentially that the court was not authorized under the showing made to appoint a receiver and hence acted arbitrarily and in abuse of its discretion in so doing.

Plaintiff's complaint which was filed on February 17, 1951, alleges that it is the owner of the mine and equipment; that on January 1, 1947, the officers who were then in control of the corporation entered into a lease for a term of 10 years; that on March 31, 1948, the same officers extended the lease for an additional term of 10 years and consented to the assignment thereof to the defendant corporation which has been in possession ever since said date; that the mine constituted substantially all of plaintiff's property; that such officers and defendant withheld information from the stockholders of the execution of said lease and that said stockholders had no knowledge thereof until the month of May, 1950; that the stockholders endeavored to hold a meeting but were prevented by the directors and officers until court action was taken; that a new board of officers has now been elected; that at a meeting held on February 8, 1951, a majority of said stockholders voted to reject said lease and on February 10, 1951, gave notice to defendant of their action and demanded a return of possession of said property but that defendant refused so to do. It is further alleged by plaintiff on information and belief that during such time defendant has taken for its own use large deposits of metal, the value of which is unknown to plaintiff. The complaint concludes with an offer to rescind said lease upon such terms and conditions as to the court may seem just and equitable and that an accounting of the parties be had under the direction of the court.

Defendant's answer to said complaint denied the material allegations thereof and asserted that it had made full compliance with the terms of said lease; that it had furnished plaintiff with a statement of the quantity of ore and minerals removed by defendant from said property and had paid plaintiff the amount of all royalties shown to be due. The answer

also denied that the directors or officers of plaintiff corporation had withheld information from the stockholders or that the stockholders had no knowledge of the execution of said lease and amendments thereto, and alleges affirmatively that the holders of more than a majority of the stock of plaintiff corporation had approved of said lease. Defendant further alleged that the plaintiff's offer to rescind was not made in good faith but was made only for the purpose of casting a cloud upon defendant's title and right to possession and to extract ore from said premises, and that said acts and statements on the part of plaintiff were the result of a conspiracy existing between certain of its officers and stockholders and certain other persons to prevent performance by defendant of said lease and to bring about a breach thereof in order that said persons might acquire for themselves a lease of said property as improved by defendant. It was further affirmatively charged by defendant that plaintiff's action was not filed timely; that plaintiff's cause is barred by its laches; that a majority of the stockholders of plaintiff corporation have for more than four years acquiesced in defendant's occupancy of said mine and urged and encouraged defendant in dewatering and developing said mine and the installation of equipment and machinery, and that plaintiff is now estopped to question the existence or validity of said lease. The complaint also was attacked on the ground that there was a fatal misjoinder of parties plaintiff in said action.

On June 29, 1951, plaintiff filed its notice of motion for the appointment of a receiver and in support thereof filed an affidavit by George B. Crane, president of plaintiff corporation. His affidavit charged that defendant had maintained armed guards on the property who were instructed not to allow any of plaintiff's representatives to enter the same; that defendant has used plaintiff's machinery and failed to keep and maintain the same in good repair; that defendant corporation is insolvent and that unless a receiver be appointed to take possession of real and personal property defendant would continue to remove ores and minerals without an accounting and further damage plaintiff's equipment. In this regard it was averred specifically that defendant corporation had failed to pay real and personal property taxes; that defendant had become delinquent and failed to pay unemployment taxes and the Department of Employment had filed a claim of lien for the same; that defendant corporation had become delinquent and failed to pay wages and

salaries to certain employees; that certain employees had taken over possession of plaintiff's machinery in order to recoup back wages, and that defendant was delinquent and had failed to pay certain fire insurance premiums on said property.

In opposition thereto one O. H. Griggs, president of defendant corporation, filed his affidavit wherein it was averred that defendant corporation had occupied the property continuously from the inception of the lease and expended over $85,000 in protecting, dewatering and otherwise improving the property. In particular it was averred that the mine had been shut down by order of the United States government in 1941 and that said shutdown was carried out by plaintiff corporation without regard to preservation or care of the mine or the machinery or equipment; that during the following five years the mine became filled with water and the underground workings were so deteriorated that at the inception of the lease it was impossible to get into the mine to make an examination, all of which necessitated extensive reconstruction of the mine. Affiant further averred that plaintiff had received its royalties for all materials extracted from the property; that the defendant corporation had paid all personal and property taxes due; that the claim of $400 filed by the Department of Employment was disputed and thereafter settled for the sum of $275; that the defendant corporation was not delinquent nor had it failed to pay wages or salaries to any of its employees except to its manager with whom a special agreement had been made. Affiant denied that the defendant corporation had failed to pay fire insurance premiums or that any lien had been filed against plaintiff's real or personal property. He further averred that by reason of a custom milling contract, executed shortly prior to the receivership hearing, plaintiff was entitled to receive 75 cents per ton for all ores milled and that plaintiff would receive regular monthly fees or royalties from such operations which he estimated to be in an amount between four and five hundred dollars a month. Griggs also charged that more than a majority of plaintiff's stockholders had inspected defendant's activities and had expressed approval of defendant's performances; that on information and belief he charged that plaintiff corporation in bringing said action did not have the approval of a majority of the stockholders; that more than 90 per cent of said stockholders did not know of the filing of the present action by plaintiff, and that proxies

obtained by George B. Crane, president of plaintiff corporation, for the meeting held on February 8, 1951, were not given to him for the purpose of filing the present suit.

The power to appoint a receiver is conferred upon the court by the enumerated provisions of section 564 of the Code of Civil Procedure, and according to respondent's brief the portions of said section pertinent to the questions presented herein are as follows:

"1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or funds, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured; . . . .

"7. In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

▪ Under said section the appointment of a receiver rests in a large measure in the sound discretion of the court. However, such power is not entirely uncontrolled and must be exercised with due regard to the facts presented in each particular case. ▪ And because the remedy of receivership is so drastic in character, "Ordinarily, if there is any other remedy, less severe in its results, which will adequately protect the rights of the parties, a court should not take property out of the hands of its owners. (*A. G. Col Co.* v. *Superior Court*, 196 Cal. 604 [238 P. 926] ; *Fischer* v. *Superior Court*, 110 Cal. 129 [42 P. 561] ; *Dabney Oil Co.* v. *Providence Oil Co.*, 22 Cal.App. 233 [133 P. 1155] ; 53 C.J., p. 25.)" (*Golden State Glass Corp.* v. *Superior Court*, 13 Cal.2d 384, 393 [90 P.2d 75].) ▪ Or, as stated in the Dabney case, *supra*, " 'Where an injunction will protect all the rights to which the applicant for the appointment of a receiver appears to be entitled, a receiver will not be appointed.' " (Citing cases.)

▪ In order for plaintiff to invoke the power of the court under subsection 1 it was necessary for it to show its joint interest with defendant in the property; that the same was in danger of being lost, removed or materially injured, and that plaintiff's right to possession was probable. Although the complaint and answer pose a question as to the validity of the lease with the resulting question as to the propriety of plaintiff's action, we shall assume, but only for the purpose

of this opinion, that such interest does exist, and if we further assume that the court believed plaintiff's right to possession was probable and even though we concede for the purpose of this opinion that the record justifies such conclusion, nevertheless it must appear further that it was necessary to protect the property from being lost, removed or materially damaged thereby securing it to plaintiff in case of a judgment in its favor. Therefore, this court is first presented with the problem, did plaintiff by a preponderance of the evidence, sustain the burden of proof so cast upon it?

The evidence produced by plaintiff in support of the order consisted, as stated, in the affidavit of Crane, his testimony, and that of two other witnesses given at the hearing. However, as noted, the allegations contained in his affidavit relative to the default of defendant regarding certain taxes. and insurance were shown to be unfounded, by the affidavit of O. H. Griggs, president of the defendant corporation and also by his testimony. Also Crane's charge that defendant was delinquent in wages to its employees was not supported. Although the testimony did show that defendant was in arrears in the salary paid to its superintendent yet the testimony of the superintendent who was called as a witness by plaintiff was that he had an agreement with defendant that the arrears in his salary were to be paid to him out of income received by defendant from its custom milling. The other witness called by plaintiff merely testified that he had paid money for such milling directly to defendant's superintendent and that he had made an agreement with defendant concerning the custom milling.

Hence, it cannot be said that such affidavits or testimony were sufficient to warrant the issuance of the order under the provisions of subsection 1. ▇ Nor can the provisions of subsection 7 be invoked to support the order since the case is clearly within the provisions of subsection 1. (*Dabney Oil Co.* v. *Providence Oil Co., supra.*)

It is apparent from the order that its only purpose is, as stated therein, to "shut down the operations of said mine and mill" and permit no person to trespass on the property. Since the same result could have been accomplished by the injunctive process, as in the Golden State Glass Corporation and Dabney cases, the rule enunciated in those cases must apply.

The order is reversed.

Van Dyke, P. J., and Schottky, J., concurred.