Filed 7/22/25

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL N. KOENIG et al., | B329529 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BC717394) |
| CENTRALIA LIMITED INVESTORS et al.; | |
| Defendants and Appellants; | |
| AXOS BANK, | |
| Defendant and Respondent. | |

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II, III, and IV of the Discussion.

APPEALS from orders of the Superior Court of Los Angeles County, David Sotelo and Malcolm Mackey, Judges. Reversed in part, affirmed in part, and remanded.

Tucker Ellis, Marc R. Greenberg, Zi. C. Lin, and Edward W. Racek for Defendants and Appellants.

Law Office of Herb Fox, Herb Fox; Law Offices of David M. Barling and David M. Barling for Plaintiffs and Respondents.

—————————

Appellants Centralia Limited Investors (Centralia Limited), Centralia Apartments, Proland Management Company, LLC (Proland), InAmerica Holdings, LLC (InAmerica), Debra L. Duggan, Centralia GP, LLC (Centralia GP), and Pioneer Limited Investors, LP (Pioneer Limited) appeal the trial court's denial of Proland's application to commence statutory buyout proceedings under Corporations Code, section 15908.02 and the court's appointment of a receiver.[1]

Because the language of section 15908.02 is mandatory and its requirements were satisfied, we conclude the trial court erred in denying Proland's application. We therefore reverse its order and remand for further proceedings consistent with this opinion. We otherwise affirm.

---

[1] All undesignated statutory references are to the Corporations Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND[2]
### *Centralia Limited*

On April 17, 1972, Centralia Limited was established as a partnership for the purpose of acquiring real property in Lakewood, California and constructing and operating a low-income apartment building on that property. Centralia Apartments is the record title owner of the apartment building. Shelter Financial Corporation (Shelter Financial) was Centralia Limited's original general partner. On June 6, 1972, the partnership agreement was amended to add limited partners, including the father of respondents Michael and Lauren Koenig. The Koenigs' father held a 10 percent interest in the partnership.[3]

On December 15, 2005, the certificate of limited partnership for Centralia Limited was amended and restated.

---

[2] We take our facts from the partnership agreements, amendments thereto, and contracts attached as exhibits to respondents' complaints or declarations submitted by the parties. While the validity of certain amendments is in dispute, their existence is not.

[3] Pursuant to the 1972 partnership agreement, for the first three years of the partnership, the net profits and losses were borne entirely by the limited partners. Commencing with the third year of the partnership and for all subsequent years, the general partner obtained a 5 percent share of profits and losses. The interests of the limited partners were reduced pro rata, resulting in the decrease of respondents' father's interest from 10 percent to 9.986 percent.

3

Donald E. Hollingshead was named general partner.[4] The agreement established that the partnership "shall continue until December 31, 2015 and for such successive periods of time as the General Partner may, from time to time, determine." It also provided: "The General Partner may, without restriction, Transfer the General Partner's interest in The Partnership to a corporation in which the General Partner owns, directly or indirectly, fifty percent (50.00%) or more of the outstanding shares of stock in such corporation and admit such corporation as a successor General Partner in The Partnership in the General Partner's place and stead with all the rights, powers and authority of the General Partner."

The amendment confirmed respondents' status as limited partners in place of their father. Respondents each held a 4.9930 percent share of the partnership. Pursuant to this amendment, Proland also became a limited partner, holding an 8.949 percent share of the partnership.

On April 10, 2015, Hollingshead and Hollingshead Management Company entered into an acquisition agreement with Debra Duggan, in her capacity as trustee for two trusts, and Proland. Under the agreement, Duggan and Proland acquired Hollingshead and Hollingshead Management Company's ownership interests in various entities, and "control positions and other assets," for over $23 million. This included their 100 percent membership interest in InAmerica and 50 percent interest in Proland.

---

[4]     Hollingshead died on November 26, 2021. The executor of his estate is a defendant in the case but is not a party to this appeal.

On April 29, 2015, in a further amendment to the Centralia Limited partnership agreement, Hollingshead assigned his general partnership interest to Centralia GP, Inc., a corporation in which he was a 50 percent stockholder.[5]  The amendment also extended the term of the partnership to December 31, 2060. Duggan signed the amendment on behalf of Centralia GP, Inc. as its president and general partner and on behalf of all limited partners.  Hollingshead Management Company was added as a limited partner, holding a 9.463 percent share of the partnership. Proland's share in the partnership also increased to 9.463 percent.  Respondents have alleged that Proland now holds at least a 54 percent interest in Centralia Limited.  On appeal, appellants contend Proland owns over 86 percent of the Centralia Limited partnership, but they do not support this claim with citation to the record.

### Centralia Apartments

On or about June 5, 1972, appellant Centralia Apartments, a general partnership, was created.  Centralia Limited, whose general partner was then Shelter Financial, was designated as one of the general partners.  Three individuals were the other general partners.  These individuals were referred to collectively both as the "construction partner," in connection with their function in the construction of the project, and "managing partner," in connection with their role "in the rental and management of the project following construction."  The stated purpose of Centralia Apartments was to acquire real property for the construction and operation of a multi-unit, low-income

---

[5]     Centralia GP, Inc. was converted into Centralia GP, a limited liability company, in November 2015.  Respondents allege that InAmerica is the managing member of Centralia GP.

apartment building pursuant to former section 236 of Title II of the National Housing Act.

Centralia Limited had a 75 percent interest in Centralia Apartments. The remaining general partners collectively held a 25 percent interest. The Centralia Apartments partnership agreement provided for capital and income accounts to be established for each partner and "[e]ach partner's distributive share of profits and losses, and the annual withdrawals not previously posted, shall be credited or debited to his income account as of the close of the fiscal year." It further provided that, "[c]oncurrently with the furnishing of each annual accounting, . . . Managing Partner shall distribute to each Partner the amount of cash shown by said accounting to be payable to each Partner," subject to limitations imposed by a federal regulatory agreement.

On October 15, 1998, the Centralia Apartments partnership agreement was amended. According to the recitals, the three original managing partners had ceased to be partners and Pioneer Limited and Hollingshead "were admitted, at various times, as new members of the Partnership and certain transfers of Partnership interests took place."[6] The amendment designated Hollingshead as the managing partner of Centralia Apartments and granted him "sole and . . . exclusive power and authority to manage all affairs of the Partnership . . . ." The

---

[6] Respondents allege that Proland held a 30 percent interest in Pioneer Limited in 2015, but now owns 100 percent of Pioneer Limited. They further allege that Hollingshead was the general partner of Pioneer Limited through the entity Shelter Centralia Properties, Inc., until that entity disassociated and Duggan became the new general partner of Pioneer Limited.

6

agreement also granted Hollingshead the right to admit any corporation he controlled as an additional partner or substitute partner in his stead. According to the 1998 amendment, Centralia Limited held a 73 percent interest in Centralia Apartments, Hollingshead held a 2 percent interest, and Pioneer Limited held a 25 percent interest. Hollingshead signed the 1998 amended agreement on behalf of Centralia Limited as its general partner. The agreement made no reference to Shelter Financial.[7]

On May 4, 2015, Hollingshead transferred his interest in Centralia Apartments to Centralia GP, Inc. pursuant to an amendment to the Centralia Apartments partnership agreement. Although the amendment identified Centralia Limited and Pioneer Limited as the remaining partners, Duggan signed the agreement on behalf of Centralia GP, Inc., Centralia Limited, and an entity named El Monte Limited, LP.

In September 2015, notwithstanding Hollingshead's transfer of his interest in Centralia Apartments to Centralia GP, Inc., and the assignment of his general partnership interest in Centralia Limited to Centralia, GP, Inc., Hollingshead signed a deed of trust for a $5 million loan on behalf of Centralia Apartments as its general partner. The loan, issued by Arbor Commercial Mortgage, LLC, was secured with a mortgage against the apartment complex.

In August 2019, Duggan signed a deed of trust for a $8.05 million loan to Centralia Apartments. Duggan signed as a

---

[7]     A 2005 amendment to the Centralia Apartments partnership agreement purported to replace Shelter Financial with Hollingshead as general partner. As counsel for appellants observed in a declaration below, the 2005 amendment conflicts with the 1998 amendments in several respects.

member of InAmerica, managing member of Centralia GP, managing member of Centralia Apartments. Axos Bank issued the loan.

### *The litigation*

On November 8, 2017, respondent Michael Koenig received a letter from Hollingshead offering to buy out his partnership share.[8] Although the 2005 amendment confirmed Michael as a limited partner in Centralia Limited, Hollingshead represented that heirs to limited partners were designated assignees, not limited partners, and did not have the right to vote in partnership affairs or to access partnership business information.

In August 2018, respondents filed a complaint against appellants. The complaint alleged that, after receiving the letter from Hollingshead, respondents began to investigate the offer and discovered the existence of the 2015 loan. They also learned that Hollingshead was no longer the general partner of Centralia Limited and Duggan, as managing member of InAmerica, managing member of Centralia GP, had become the general partner. Respondents had not been informed of the loan or the change of general partner.

The complaint further alleged that Hollingshead had sent similar letters to other limited partners and had bought their interests "at a reduced price based on the repeated false and incorrect statements that 'heirs do not become limited partners but instead are designated assignees,' [and] that limited partners 'do not have the right to vote in partnership affairs or access to partnership business information' . . . ." Respondents were

---

[8]     Because respondents share the same last name, we will refer to Michael by his first name.

unaware of and did not participate in the 2015 amendment to the Centralia Limited partnership agreement.

The complaint asserted causes of action for breach of partnership agreements, breach of fiduciary duty, breach of good faith and fair dealing, conversion, and fraud. They sought as relief an injunction, declaratory relief, dissolution of Centralia Apartments and Centralia Limited, disassociation of the general partner, and partition. As an alternative remedy to dissolution, the complaint prayed that the court order Centralia Limited to purchase respondents' interests pursuant to section 15908.02, subdivision (b).

In November 2018, appellants demurred to the complaint. In May 2019, respondents filed the first amended complaint and appellants again demurred. The court sustained the demurrer but granted respondents leave to amend certain causes of action. Respondents filed a second amended complaint in January 2022.[9] Among other changes, the complaint alleged derivative claims on behalf of Centralia Limited against Centralia Apartments, named Axos Bank as a defendant, and added allegations concerning the August 2019 Axos Bank loan. It was the last complaint in which respondents prayed, in the alternative, that the court order Centralia Limited to purchase respondents' interests pursuant to section 15908.02, subdivision (b).

***Request for appointment of a receiver***

In July 2022, respondents sought leave to file a third amended complaint. They also filed a motion to appoint a receiver, Kevin Singer, to operate the apartment building.

---

[9] In February 2022, other limited partners in Centralia Limited filed a cross-complaint against appellants. They ultimately settled their action.

9

Respondents argued the appointment of a receiver was necessary to protect and conserve the partnership assets and respondents' share of future rental proceeds, and because of self-dealing and intentional malfeasance by Duggan and other defendants.

Michael submitted a supporting declaration, in which he stated that he was unaware of and did not approve the $5 million loan with Arbor Commercial Bank in 2015. He declared that he was unaware of the 2015 amendment to the Centralia Limited partnership agreement until 2018, when he made a demand for partnership documents. Michael also stated that prior to the litigation, he had never seen the 2015 amendment to the Centralia Apartments partnership agreement. Michael believed that he had "stopped receiving Centralia Limited yearly distribution checks at a minimum in 2010 and it could have been before 2010." He did not receive a distribution check in either 2015 or 2016 of excess proceeds from the 2015 refinance. He also did not receive a distribution in 2019 or 2020 of the excess proceeds from the Axos Bank refinance. He did not authorize the Axos Bank refinance and had not known about it.

In support of the request for the appointment of a receiver, respondents' counsel also submitted a declaration attaching the 1972 Centralia Apartments partnership agreement, the 2015 amendment, and financial statements Centralia Apartments provided to Arbor Commercial Bank. The statements showed net income of $271,960 for 2017, $277,380 for 2018, and $96,545 for January through June of 2019.

Appellants opposed the request for the appointment of a receiver on the ground that respondents, as limited partners of Centralia Limited, had no direct ownership interest in the apartments. Appellants further argued that respondents had

failed to demonstrate the need for a receiver through a verified complaint or sufficient affidavits.  Appellants did not submit any evidence in support of their opposition.

In September 2022, the trial court granted respondents' request to file a third amended complaint.  Appellants demurred on the grounds that the third amended complaint was substantially similar to the first amended complaint and failed to address the deficiencies the trial court had previously identified.  In November 2022, the trial court sustained the demurrer in part with leave to amend.

The court also granted respondents' motion to appoint a receiver.  The court found that the allegations of the third amended complaint (which it erroneously stated was verified) and respondents' evidence showed: 1) the 2015 Centralia Apartments partnership agreement was not signed by the general partners identified in the 1972 partnership agreement; 2) no distributions of net rental profit income received by Centralia Apartments had been made to Centralia Limited and its limited partners since at least 2010, despite income statements showing $645,885 in net rental income profits for the building between January 2017 and June 2019; and 3) no distributions had been made to the limited partners of Centralia Limited in connection with the 2015 commercial mortgage or 2019 loan.  Because appellants' briefing failed to rebut respondents' arguments concerning the failure to distribute rental income and excess loan proceeds to Centralia Limited and its limited partners, the court found it had sufficient grounds to appoint a receiver "for the purpose of managing and protecting the affairs and interest of Centralia Limited and its Limited Partners as to Centralia Apartments and peripheral matters."

11

Respondents served notice of these rulings on appellants on December 2, 2022.

***Application for statutory buyout and request for reconsideration of the receivership order***

In December 2022, Proland filed an application for a statutory buyout of respondents' interests in Centralia Limited pursuant to section 15908.02. The application represented that, if the parties were unable to agree on the fair market value of respondents' interests, Proland agreed to the procedure set forth in section 15908.02, subdivisions (d) and (e), and to post a bond in an amount to be determined by the court pursuant to subdivision (c).

The receiver filed an ex parte application for instructions regarding his duties, authority, compensation, and bond. The trial court denied the ex parte but set a noticed hearing for January 2023. However, the court subsequently issued an "Order Clarifying Entities to Receive Aid," which stated that Singer was "to be appointed as Receiver in this action" over Centralia Limited and the apartment building owned by Centralia Apartments. The court stayed the receiver assignment until January 2023.

Also in December 2022, respondents filed their fourth amended complaint. The complaint asserted individual causes of action for breach of partnership agreements, breach of fiduciary duty, conversion, declaratory relief, and dissolution of Centralia Limited, as well as derivative claims on behalf of Centralia Limited against Centralia Apartments for breach of contract, breach of fiduciary duty, conversion, fraud, declaratory relief, dissociation of general partner of Centralia Limited, dissociation

12

of general partner of Centralia Apartments, and dissolution of Centralia Apartments.

Several days later, appellants filed a motion for reconsideration of the order appointing the receiver. They argued that the receiver's ex parte application "demonstrated his bias in favor of [respondents] in breach of his duty of neutrality." They contended, among other things, that Proland's initiation of statutory buyout proceedings under section 15908.02 eliminated the need for a receiver, as a stay of proceedings under that section is mandatory and respondents would have no further interest in Centralia Limited once their shares were purchased. Appellants also filed a demurrer to the fourth amended complaint.

In January 2023, respondents filed an opposition to the motion for statutory buyout. They argued that appellants failed to establish that they satisfied the requirements of section 15908.02 because the partnership had allegedly expired in 2015.

In March 2023, appellants filed an updated motion for reconsideration of the order appointing a receiver. Appellants again argued respondents could not seek a receivership based on an unverified pleading, the receiver was biased in favor of respondents, and Proland's institution of statutory buyout proceedings made a receiver unnecessary. The receiver and respondents opposed the motion.

In April 2023, the trial court held a hearing on appellants' demurrer to the fourth amended complaint. It overruled the demurrer in its entirety.

On May 9, 2023, the trial court issued a tentative order denying appellants' motion for statutory buyout and motion for

13

reconsideration of the order appointing the receiver, and granting the receiver's application for instructions regarding his duties. With respect to the buyout, the court concluded "[t]he First Amended Complaint is not suitable for a statutory buyout, including because plaintiffs' allegations, arguments and proof include arguments made in the alternative, that the subject partnership agreement expired in 2015 such that several subsequent agreements are void, or that the partnership exists and should be dissolved." The court posited that "appraisers would be unable to soundly ascertain a fair market value of the subject partnership interests, while the contested allegations are still pending, which could result in unpredictable findings about the partnership and its assets. Appraisers likely would notify the Court of such obstacles to appraisals, upon discovering them, as has happened in other cases having unresolved issues related to appraisals." It further stated that section 15908.02 was "a discretionary procedure."

With respect to the motion for reconsideration, the trial court stated that the predecessor judge "made a long, well-reasoned decision, supported by references to other documentation, which was not confined to an unverified complaint as the supporting bases." The court concluded the buyout motion was not a new fact for reconsideration because it postdated the original ruling and the court had denied the motion.

Finally, with respect to the receiver's request for clarification, the court adopted the receiver's proposed order clarifying the scope of his role "because the predecessor Judge's ruling was clear enough to show those intentions,

notwithstanding that the ruling could have been written with more detail."

On May 10, 2023, after hearing argument from the parties, the trial court adopted its tentative order. The court appointed Singer as receiver over Centralia Limited and over the apartment building owned by Centralia Apartments. The court granted the receiver the power to take possession of the apartment building, operate it, and recover rents. The receiver filed a notice of entry of order on May 11, 2023.

On May 11, 2023, appellants filed their notices of appeal of the order denying the application for statutory buyout and order appointing a receiver.[10]

## DISCUSSION

Appellants contend the trial court erred in denying appellants' motion to initiate a buyout proceeding under section 15908.02 and reversal of the trial court's denial of the buyout motion moots the remainder of the appeal. They also contend that the trial court abused its discretion in granting respondents' motion to appoint a receiver.

Respondents argue that the court properly denied the buyout motion and they seek dismissal of the appeal of the order

---

[10] Section 15908.02, subdivision (d), provides that "[a]ny member aggrieved by the action of the court may appeal therefrom," and thus "expressly confers a statutory right to appeal from an action of the court on a request for buyout of interests by partners who seek judicial dissolution of a partnership." (*Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 625 (*Panakosta*).) Code of Civil Procedure section 904.1, subdivision (a)(7), provides that an appeal may be taken "[f]rom an order appointing a receiver."

15

appointing the receiver on the ground that it was not timely filed. They also contend that the court acted within its discretion in appointing a receiver.

We conclude that the trial court erred in denying Proland's motion to commence buyout proceedings. This conclusion does not moot the remainder of the appeal, as respondents will continue to have an interest in Centralia Limited until the conclusion of the buyout proceedings, and the receiver may act to protect Centralia Limited's interest in Centralia Apartments until the parties cease to have a joint interest in it. We therefore review the trial court's order appointing a receiver and find no abuse of discretion. However, on remand, the trial court may determine whether any modification of the receiver's orders is appropriate in light of our ruling regarding the buyout proceedings.

## I.    The Trial Court Erred in Denying the Application to Commence Statutory Buyout Proceedings

### A.    Standard of review and applicable legal principles

We independently review the trial court's interpretation of section 15908.02. (*Panakosta*, *supra*, 199 Cal.App.4th at p. 628.) " ' "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd

16

consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.  [Citations.]" [Citation.]  "If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to . . . apply 'reason, practicality, and common sense to the language at hand.' [Citation.]" [Citation.] With the consequences that will flow from our interpretation in mind, we must give the words of the statute a workable and reasonable interpretation.  [Citation.]' [Citation.]" (*Ibid*.)

Subdivision (a) of section 15908.02 provides that, "[o]n application by a partner, a court of competent jurisdiction may order dissolution of a limited partnership if it is not reasonably practicable to carry on the activities of the limited partnership in conformity with the partnership agreement."  (§ 15908.02, subd. (a).)

Subdivision (b) provides, in relevant part, that "[i]n any suit for judicial dissolution, the other partners may avoid the dissolution of the limited partnership by purchasing for cash the partnership interests owned by the partners so initiating the proceeding (the 'moving parties') at their fair market value." (§ 15908.02, subd. (b).)

Subdivision (c) states: "If the purchasing parties (1) elect to purchase the partnership interests owned by the moving parties, (2) are unable to agree with the moving parties upon the fair market value of the partnership interests, and (3) give bond with sufficient security to pay the estimated reasonable expenses, including attorneys' fees, of the moving parties if the expenses are recoverable under subdivision (d), the court, upon application

17

of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties." (§ 15908.02, subd. (c).)

> ### B. The trial court erred in concluding that section 15908.02 is discretionary

Appellants contend the plain language of section 15908.02 establishes that the buyout procedure is mandatory. Subdivision (c) provides that, if the conditions set forth are satisfied, the court "*shall* stay the winding up and dissolution proceeding and *shall* proceed to ascertain and fix the fair market value of the partnership interests owned by the moving parties." (§ 15908.02, subd. (c), italics added.) "[T]he usual rule with California codes is that 'shall' is mandatory . . . ." (*Walt Rankin & Associates, Inc. v. City of Murrieta* (2000) 84 Cal.App.4th 605, 614.) Nothing in the text of section 15908.02 suggests that its use of "shall" is permissive. Respondents do not meaningfully dispute this point.

Even if the language of section 15908.02 was unclear, we find instructive cases interpreting the provision governing buyout proceedings for a corporation, section 2000 and its statutory predecessors, as sections 2000 and 15908.02 are substantively identical.[11] (*Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 136–

---

[11] Section 2000 permits a buyout "[i]n any suit for involuntary dissolution." (§ 2000, subd. (a).) Subdivision (b) of section 2000 provides: "If the purchasing parties (1) elect to purchase the shares owned by the moving parties, and (2) are unable to agree

18

137 (*Schrage*).) These decisions have concluded that the statutory language is "mandatory and that when the prescribed conditions are met the court must recognize the right thus clearly given and must stay the proceeding and proceed to ascertain and fix the value of the shares owned by the plaintiffs." (*Merlino v. Fresno Macaroni Mfg. Co.* (1944) 64 Cal.App.2d 462, 464; accord, *Alvak Enterprises v. Phillips* (1959) 167 Cal.App.2d 69, 75.) Moreover, "[i]f the purchasing party meets the statutory conditions, the court cannot impose any additional conditions on the purchasing party's right to elect to purchase the shares of the moving party." (*Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1376.)

Considering the plain language of section 15908.02, and the similarities between the language of sections 15908.02 and 2000 and its predecessors, we conclude that the buyout procedure of section 15908.02 is mandatory if the conditions set forth in that section are met.

### C. The requirements of section 15908.02 were satisfied

We therefore consider whether the conditions of section 15908.02 were satisfied. We conclude they were.

---

with the moving parties upon the fair value of those shares, and (3) give bond with sufficient security to pay the estimated reasonable expenses (including attorneys' fees) of the moving parties if those expenses are recoverable under subdivision (c), the court upon application of the purchasing parties, either in the pending action or in a proceeding initiated in the superior court of the proper county by the purchasing parties in the case of a voluntary election to wind up and dissolve, shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties."

"[A] partnership dissolution proceeding is, like its corporation dissolution counterpart, a special proceeding . . . ." (*Guttman v. Guttman* (2021) 72 Cal.App.5th 396, 409 (*Guttman*); cf. *Merlino v. Fresno Macaroni Mfg. Co.* (1946) 74 Cal.App.2d 120, 124.)  Similarly, "[t]he statutory buyout procedure . . . has been aptly described as a 'special proceeding' rather than a civil 'action.'  [Citation.]" (*Go v. Pacific Health Services, Inc.* (2009) 179 Cal.App.4th 522, 532 (*Go*).)  "Because it is a special proceeding, it is governed by the terms and conditions set forth in the section itself, and not by the provisions of the Code of Civil Procedure, except when such provisions are expressly made applicable." (*Abrams v. Abrams-Rubaloff & Associates, Inc.* (1980) 114 Cal.App.3d 240, 247.)

A prerequisite of a buyout proceeding is a pending "suit for judicial dissolution." (§ 15908.02, subd. (b); see also *Guttman, supra,* 72 Cal.App.5th at p. 408 ["a buyout proceeding depends upon the existence of a dissolution proceeding and, where a dissolution proceeding is dismissed prior to the granting of a motion to commence the buyout proceeding, the buyout proceeding cannot go forward"]; *Panakosta, supra,* 199 Cal.App.4th at p. 630 ["The trial court lacks jurisdiction to grant a buyout under section 15908.02 when no cause of action for judicial dissolution is pending."].)  This requirement is satisfied here.  Although respondents eventually abandoned their alternative request for a buyout, they at no point dismissed their cause of action for dissolution.

As required by section 15908.02, subdivision (c), Proland "elect[ed] to purchase the partnership interests owned by the moving parties," the parties evidently "are unable to agree with the moving parties upon the fair market value of the partnership

20

interests," and Proland offered to post a bond. Thus, the conditions of the statute were satisfied.

Respondents do not dispute this point. Rather, they argue that "[t]he 'plain and commonsense meaning' of § 15908.02 is that there must be an existing partnership before a buyout can be ordered" and appellants failed to proffer evidence that the partnership continued to exist past 2015. Respondents further contend that they were permitted to assert a cause of action for dissolution as an alternative to their theory that the partnership had expired. They argue the trial court was therefore permitted to allow them to litigate their expired partnership theory instead of granting Proland's application to commence buyout proceedings.[12]

Respondents identify no language in the statute to support the argument that Proland was required to make a preliminary evidentiary showing before it could "vindicat[e][its] statutory

---

[12] We reject appellants' contention that respondents' arguments are barred because the first amended complaint did not include the allegation that Centralia Limited expired in 2015. Not only is the contention forfeited because appellants did not assert it in their opening brief (*Tukes v. Richard* (2022) 81 Cal.App.5th 1, 12, fn. 5), it also relates to a superseded complaint. The operative fourth amended complaint alleges that the 2015 amendment, which extended the partnership term, was "without force and effect as the Limited Partners did not authorize the Amendment . . . ." We also disagree that the judicial admissions doctrine barred respondents from alleging that the Centralia Limited partnership had expired. California law permits the pleading of inconsistent factual theories where facts are not positively stated but based on information and belief. (*Adams v. Paul* (1995) 11 Cal.4th 583, 593; *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.)

21

right" to purchase respondents' interest in Centralia Limited. (*Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 270 (*Ontiveros*).) Indeed, respondents' claim that their alternative allegation must be tried before the buyout proceeding may take place is inconsistent with the streamlined procedure set forth in the statute. Although a plaintiff is generally permitted to plead alternative legal theories (*Batta v. Hunt* (2024) 106 Cal.App.5th 295, 304), buyout proceedings under section 15908.02 are special proceedings. " ' "Special proceedings being of statutory origin . . . do not proceed according to the course of the common law . . . but give new rights and afford new remedies. [Citation.]" ' [Citation.]" (*Go*, *supra*, 179 Cal.App.4th at p. 532.)

The *Go* court observed that a section 2000 buyout proceeding "embodies a summary proceeding which supplants the action for involuntary dissolution." (*Go*, *supra*, 179 Cal.App.4th at p. 530.) It provides relief for parties that "aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation, in order to preserve the corporation." (*Id.* at p. 531; accord, *Ontiveros*, *supra*, 27 Cal.App.5th at p. 277 [observing that "the special proceeding under section 2000 includes none of the attributes of a trial," "[t]here is no resolution of the disputes on the merits," and "provides the plaintiff and defendant with a statutory remedy without trial"].) Section 15908.02, like section 2000, contemplates a summary proceeding that avoids the need to litigate the underlying dispute over dissolution.

The general rule that a plaintiff may pursue alternative theories until trial does not foreclose the commencement of buyout proceedings under section 15908.02. Moreover, a trial court commencing buyout proceedings pursuant to

22

section 15908.02 is not forcing an election upon the plaintiff. Respondents asserted a cause of action for dissolution in which they affirmatively alleged that they are limited partners in Centralia Limited, implicitly conceding the continued existence of a partnership and that there are other partners. "When [respondents] elected to seek judicial dissolution of the partnership, it triggered [the other partners'] option of seeking the judicial remedy of buyout under section 15908.02." (*Panakosta*, *supra*, 199 Cal.App.4th at p. 638.) In other words, it was respondents' election to seek involuntary dissolution, and Proland's exercise of the buyout option triggered by that election, that limited respondents' ability to pursue their alternative theory that the partnership no longer exists. A trial court has no discretion to deny the buyout remedy where the statutory requirements are met.

The trial court expressed concern that the "appraisers would be unable to soundly ascertain a fair market value of the subject partnership interests, while the contested allegations are still pending." Courts have recognized that, "as with a corporate dissolution, the section 2000 buy-out procedure is subject to equitable limitations." (*Trahan v. Trahan* (2002) 99 Cal.App.4th 62, 78; *Crane v. R. R. Crane Investment Corp.* (2022) 82 Cal.App.5th 748, 762.) However, we are aware of no authority under sections 15908.02 or 2000 indicating that the potential difficulty of reaching a fair market value appraisal is an equitable basis to deny a motion to commence a buyout proceeding when the statutory prerequisites are satisfied. Thus, we conclude that the trial court erred in denying Proland's application to commence buyout proceedings.

Appellants contend "the only true dispute between the parties" is whether the proper valuation in the buyout proceeding is "fair value" or "market value" and they ask this court to weigh in. We decline to comment on an issue not reached by the trial court.

Finally, we provide the following guidance for the trial court on remand. As discussed, section 15908.02, subdivision (c), indicates that, upon the election of the purchasing parties to purchase the interests owned by the party seeking dissolution, "the court . . . shall stay the winding up and dissolution proceeding." It is therefore apparent that the cause of action seeking dissolution of Centralia Limited must be stayed while the statutory buyout proceedings are pending. However, respondents' complaint asserts other causes of action. Although nothing in the language of section 15908.02 requires the trial court to stay causes of action that have been asserted simultaneously with a dissolution action (see, e.g., *Schrage*, *supra*, 69 Cal.App.5th at p. 133), the court certainly has the authority and discretion to do so. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 141 [trial court's " 'inherent power' " to stay proceedings is " 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants' "]; *Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489 ["Trial courts generally have the inherent power to stay proceedings in the interests of justice and to promote judicial efficiency."].)

At oral argument, the parties appeared to agree that at least some of respondents' claims—namely respondents' non-derivative claims—will survive a statutory buyout. Although both sides also appear to ask this court to delineate which claims

may be stayed, which claims will survive the buyout, and which will cease to be viable, we decline the request. (See *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1126 [" 'The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.' "].) The parties did not brief these issues in any detail and, given that they may turn on the resolution of factual questions, we find it appropriate for the trial court to determine the issues in the first instance.

[[Begin nonpublished portion.]]

## II. The Commencement of Buyout Proceedings Does Not Moot the Appointment of the Receiver

In their opening and reply briefs, appellants contend that a determination that the trial court erred in denying the buyout motion "moots" the remainder of the appeal.[13] We disagree.

"[A] moot case is one in which there may have been an actual or ripe controversy at the outset, but due to intervening events, the case has lost that essential character and, thus, no longer presents a viable context in which the court can grant effectual relief to resolve the matter." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222.)

The trial court appointed a receiver "to ensure that Centralia Limited's interest in Centralia Apartments is properly protected." The court cited Code of Civil Procedure section 564, subdivision (b)(1) and (9), in support of the order. Subdivision (b)(1) provides for the appointment of a receiver "[i]n

---

[13] Although appellants fail to cite any authority in support of this claim, we address it because we generally do not decide moot cases. (*Cardona v. Soto* (2024) 105 Cal.App.5th 141, 148.)

an action . . . between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff . . . where it is shown that the property or fund is in danger of being lost, removed, or materially injured." Subdivision (b)(9), the catchall provision, applies "[i]n all other cases where necessary to preserve the property or rights of any party."  Because courts have rejected attempts to invoke the catchall provision in cases in which one of the specific subsections applies (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 246, fn. 8; *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.* (1953) 116 Cal.App.2d 869, 874 (*Alhambra*)), we focus on Code of Civil Procedure section 564, subdivision (b)(1).

To invoke the authority of the court to appoint a receiver under section 564, subdivision (b)(1), the plaintiff must establish by a preponderance of the evidence a "joint interest with [the] defendant in the property; that the same was in danger of being lost, removed or materially injured, and that plaintiff's right to possession was probable." (*Alhambra, supra,* 116 Cal.App.2d at p. 873.)

In a buyout proceeding under section 15908.02, "[e]ven if the purchasing parties ultimately decline to purchase the moving party's interests, there is no trial of the dissolution cause of action; the 'self-executing' decree [citation] dissolving the partnership is simply 'entered against' the purchasing parties (§ 15908.02, subd. (d))." (*Guttman, supra,* 72 Cal.App.5th at p. 413.)  In other words, the inevitable consequence of the buyout proceeding is that appellants and respondents will no longer be persons with a joint interest in Centralia Limited and Centralia Apartments and the receiver will lack authority under Code of Civil Procedure section 564, subdivision (b)(1).  However, until

26

the buyout is completed or Centralia Limited is dissolved, the parties will arguably continue to have a joint interest in property.

Accordingly, our consideration of the order appointing the receiver will not be ineffective. If we conclude the trial court properly appointed the receiver, the receiver may protect Centralia Limited's (and thus respondents') interest in Centralia Apartments for the duration of the buyout proceeding. Although it is a summary proceeding, it may take several months, if not longer. (See, e.g., *Guttman*, *supra*, 72 Cal.App.5th at p. 404 [trial court set three-month deadline for submission of appraisals and set hearings two and four months after submission]; *Go*, *supra*, 179 Cal.App.4th at p. 528 [trial court set appraisal submission deadline one year after order providing for appointment of appraisers and held hearing two months later].)

We therefore consider whether the appeal of the order appointing the receiver was timely filed and, if so, whether the trial court abused its discretion in appointing a receiver.

## III. The Appeal of the Order Appointing the Receiver Was Not Untimely

Pursuant to California Rules of Court, rule 8.104(a)(1), appellants were required to file their notice of appeal on or before the earliest of the following: (A) 60 days after the court clerk served a document entitled "Notice of Entry" of the order or a filed-endorsed copy of the order, showing the date either was served; (B) 60 days after the plaintiffs were served with a document entitled "Notice of Entry" or the file-endorsed copy of the order, accompanied by a proof of service; or (C) 180 days after entry of the order.

Respondents contend appellants' appeal of the order appointing the receiver, filed on May 11, 2023, was untimely

27

because the order appointing the receiver was entered on November 30, 2022, and notice of the order was served on December 2.  They argue that appellants' timely motion for reconsideration, filed December 14, 2022, only extended the deadline to appeal 90 days, i.e., to March 14, 2023.  (See Cal. Rules of Court, rule 8.108(e)(2).)

Appellants assert that the November 30, 2022 filing was an unsigned ruling, and the December 2, 2022 document respondents served on them was not a notice of entry of the order, but a notice of ruling, which is not an appealable order.  They argue the only appealable order appointing a receiver was entered on May 10, 2023, and served on them on May 11, 2023.

The record supports appellants' characterization of the documents.  The document filed on November 30, 2022 was an unsigned ruling.  On December 2, 2022, respondents served a document captioned "Notice of Rulings on . . . Plaintiffs' Motion for Appointment of Receiver."  "A notice of ruling is not an order; an order is a document which contains a direction by the court that a party take or refrain from action, or that certain relief is granted or not granted [citations] and which is either entered in the court's permanent minutes or signed by the judge and stamped 'filed.'  [Citations.]"  (*Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1179.)

The record does not indicate that appellants were served with any document titled "Notice of Entry" pertaining to the appointment of a receiver until the receiver served the parties with a "Notice of Entry of Order" attaching the "Order Establishing Receiver's Duties, Authority, Compensation and Bond," which was signed by the trial court, on May 10, 2023.  The

order stated "Kevin Singer is appointed as Receiver in this action . . . ."

Appellants' notice of appeal stated that they appealed the "11/30/2022 order, denying reconsideration [¶] entered on 05/10/2023." The notice also identified the "Order appointing receiver, Code Civ. Proc. § 904.1(7)." California Rules of Court, rule 8.100(a)(2) provides: "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." The notice clearly identifies the order appointing the receiver as an order being appealed.

We therefore conclude that the appeal of the order appointing the receiver was timely filed and the notice of appeal adequately identified the order being appealed.

## IV. The Trial Court Did Not Abuse Its Discretion in Appointing a Receiver

### A. Standard of review and applicable legal principles

As discussed, Code of Civil Procedure section 564, subdivision (b)(1), provides for the appointment of a receiver "[i]n an action . . . between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff . . . where it is shown that the property or fund is in danger of being lost, removed, or materially injured."

" ' "The receiver is but the hand of the court, to aid it in preserving and managing the property involved in the suit for the benefit of those to whom it may ultimately be determined to belong." [Citations.]' [Citation.]" (*People v. Stark* (2005) 131 Cal.App.4th 184, 204.) "Because the appointment of a receiver transfers property . . . 'out of the hands of its owners' and into the hands of a receiver [citation], the appointment of a receiver is a

29

very 'drastic,' 'harsh,' and costly remedy that is to be 'exercised sparingly and with caution.' [Citations.] Due to the 'extraordinary' nature of this remedy and the special costs it imposes, courts are strongly discouraged—although not strictly prohibited—from appointing a receiver unless the more intrusive oversight of a receiver is a 'necessity' because other, less intrusive remedies are either ' "inadequate or unavailable." ' [Citations.]" (*Medipro Medical Staffing LLC v. Certified Nursing Registry, Inc.* (2021) 60 Cal.App.5th 622, 628.) However, "the availability of other remedies does not, in and of itself, preclude the use of a receivership." (*City and County of San Francisco v. Daley* (1993) 16 Cal.App.4th 734, 745 (*Daley*).)

" ' " 'The rule is established that the appointment of a receiver rests largely in the discretion of the trial court and that its action in appointing a receiver or its refusal of an application for the appointment of such an officer will not be disturbed in the absence of a showing that the court's discretion has been abused.' " [Citation.]' [Citations.]" (*Daley*, *supra*, 16 Cal.App.4th at p. 744.) "Where it appears that there is danger of a misappropriation of the property of the partnership and the evidence is conflicting as to the likelihood of loss, the reviewing court is in no position to say that the court below has abused its discretion." (*Sibert v. Shaver* (1952) 113 Cal.App.2d 19, 21–22.)

## B. The trial court did not abuse its discretion in appointing a receiver

The trial court concluded the appointment of the receiver was justified by allegations and evidence showing: 1) the general partners identified in the 1972 partnership agreement did not sign the 2015 Centralia Apartments partnership agreement; 2) no distributions of net rental profit income received by

Centralia Apartments had been made to Centralia Limited and its limited partners since at least 2010, despite income statements showing $645,885 in net rental income profits for the building between January 2017 and June 2019; and 3) no distributions had been made to the limited partners of Centralia Limited in connection with the 2015 commercial mortgage or 2019 loan. The court also found that appellants failed to rebut these points. It therefore appointed a receiver as to Centralia Limited to ensure that Centralia Limited's interest in Centralia Apartments was sufficiently protected.

Appellants contend the court lacked a sufficient basis to appoint a receiver because it incorrectly believed that the third amended complaint was verified. However, many of the relevant allegations of the third amended complaint are repeated in Michael's declaration. "Evidence to justify the appointment of a receiver may be presented 'in the form of allegations in a complaint or other pleading, by affidavit or by testimony.' [Citation.]" (*Armbrust v. Armbrust* (1946) 75 Cal.App.2d 272, 274, italics omitted.)

Michael declared under penalty of perjury that prior to 2018, he was unaware of and did not agree to the change in the general partner of Centralia Limited in 2015, the Arbor Commercial Bank refinancing, or the Axos Bank loan, and that he believed he had not received yearly distribution checks from Centralia Limited since 2010. Although Michael's declaration did not assert that the general partners identified in the 1972 agreement did not sign the 2015 Centralia Apartments partnership agreement, as alleged in the third amended complaint, respondents' counsel attached the 1972 and 2015 agreements to his declaration. Thus, the trial court could

31

ascertain for itself whether the original general partners had signed the 2015 amendment.

Appellants further argue the declarations of Michael and his attorney and the attached exhibits were not competent evidence. Although appellants argued in their opposition brief below that the motion to appoint a receiver was based on "bald allegations, not facts," they did not assert any specific evidentiary objections. We cannot set aside a decision "by reason of the erroneous admission of evidence" where there was no objection or motion to strike "timely made and so stated as to make clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a).)

Appellants' argument that the court relied on incomplete information is likewise unpersuasive. They did not submit the 1998 amendment to the Centralia Apartments partnership agreement to the court until they filed their motion for reconsideration and they do not contend on appeal that the trial court improperly denied the motion for reconsideration. Indeed, the 1998 amendment was not a proper basis for reconsideration. Facts of which a party was aware at the time of the original ruling are not "new or different facts" that will support reconsideration. (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468.)

Appellants further contend that the trial court abused its discretion in appointing a receiver because respondents' interest in Centralia Apartments was indirect and they "were not entitled to demand distributions of rents or to participate in the decisions of Centralia Apartments." Similarly, because respondents are limited partners in Centralia Limited, appellants contend that

32

they have no right to control the partnership or demand any distribution of funds.

We disagree. Respondents have an indirect interest by virtue of their 9.986 percent interest in Centralia Limited which, in turn, has a 73 or 75 percent interest in Centralia Apartments, depending on the legitimacy of the amendments to the Centralia Apartments partnership agreement. The 1972 partnership agreement, pursuant to which Centralia Limited was named a general partner, contemplated annual cash distributions to the partners. The Centralia Limited partnership agreement likewise appeared to contemplate annual distributions of profits: it described how the profits "*shall* be shared" in the first calendar year and in the "third year and subsequent years of operation." (Italics added.) Michael's declaration suggested that Centralia Limited had, until at least 2010, distributed profits to its partners on an annual basis. Thus, respondents' evidence supported its claim that Centralia Limited had or should have received significant amounts in net profits from Centralia Apartments on an annual basis, yet Michael had not received any yearly distributions since approximately 2010. As respondents observe, the appointment of a receiver should not be disturbed on appeal if they demonstrated "at least a probable right or interest in the property sought to be placed in receivership." (*Sachs v. Killeen* (1958) 165 Cal.App.2d 205, 213.)

Appellants additionally contend that the trial court failed to consider less drastic remedies and they cite the absence of any discussion of alternative remedies in the court's order. "We assume the trial court was aware of and followed applicable law. [Citation.] [Appellants'] citation to a silent record is insufficient to meet [their] burden to demonstrate an abuse of discretion."

33

(*People v. Coleman* (2024) 98 Cal.App.5th 709, 724–725.) We have no reason to assume that the court was unaware of the need to consider less drastic remedies, considering appellants argued below that "[c]ourts have declined to appoint a receiver when an alternative remedy . . . may serve to protect whatever rights the parties assert in the property that is the subject of the litigation."

Appellants rely on *Alhambra* for the proposition that "[a] receiver is not to be appointed unless no other remedy will do the job." However, the court in *Alhambra* reversed on the ground that "it cannot be said that [the] affidavits or testimony were sufficient to warrant the issuance of the [receivership] order," and further observed "the same result [achieved by the receivership order] could have been accomplished by the injunctive process." (*Alhambra, supra,* 116 Cal.App.2d at p. 874.) The defendant in *Alhambra,* unlike appellants, submitted evidence that showed the allegations in the plaintiffs' affidavit were "unfounded." (*Ibid.*)

Finally, appellants claim the trial court erred in appointing a receiver who lacked neutrality. The record does not establish that the receiver acted in a biased manner. The trial court's initial ruling appointing a receiver lacked details regarding his duties, authority, compensation, or the bond amount, and the parties disagreed about the scope of his role. We disagree with appellants' contention that the receiver's request for clarification was an attempt to attain a "desired, but previously rejected, result."

Similarly, that the receiver disagreed with appellants as to whether Proland's application for statutory buyout stayed proceedings and eliminated the need for a receiver did not compel the conclusion that the receiver lacked neutrality. We have

34

concluded the receivership is not rendered moot by buyout proceedings.  Appellants also claim that the receiver inappropriately accused them "of mismanaging the partnerships and 'absconding' with funds despite having not started any work," but they fail to support this contention with a citation to the reporter's transcript.  In the portion of the appellants' appendix they cite, the receiver denied having made such accusations.

In sum, appellants fail to demonstrate that the trial court abused its discretion in appointing a receiver.  However, on remand, the trial court may consider whether the commencement of buyout proceedings renders appropriate any modification of the orders appointing the receiver and defining the scope of his role.  (See *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 499 [trial court may modify receiver's functions as circumstances warrant, as "receiver is a mere agent and the property in his hands is really under the control and continuous supervision of the court"].)

[[End nonpublished portion.]]

## DISPOSITION

We reverse the trial court's order denying Proland's application to commence statutory buyout proceedings under Corporations Code section 15908.02 and remand for further proceedings consistent with this opinion.  We affirm the trial court's order appointing a receiver under Code of Civil Procedure section 564.  The parties shall bear their own costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

GAAB, J.*

---

\*      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.